**Carl B. BENNETT, Plaintiff,**

v.

**CIRCUS U.S.A.; Burrell Cohen and Curtis Lentz d/b/a Circus U.S.A., Inc. and/or Circus Palace; Burrell Cohen; and Curtis Lentz, Defendants.**

**Civ. No. F 82–336.**

United States District Court, N.D. Indiana, Fort Wayne Division.

Nov. 6, 1985.

Stephen H. Trexler and Mark A. Warsco, Holleran & Trexler, Frank J. Gray and Patrick J. Arata, Fort Wayne, Ind., for plaintiff.

Donald Regan, Costa Mesa, Cal., for Cohen.

**144**

Ward W. Miller, Bloom & Bloom, Fort Wayne, Ind., for Lentz.

ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on defendant Lentz' motion to set aside the default judgment entered against him on February 17, 1984. Both Lentz and the plaintiff Bennett have filed briefs on the issues presented by the motion, as well as affidavits in support of their positions. A hearing on the motion was held on October 15, 1985. For the following reasons, the motion to set aside the default judgment will be granted upon the posting of the bond described herein.

Based upon the court's assessment of the affidavits presented by the parties as well as the testimony presented at the hearing, and an examination of the court docket and documents filed in this case, the court finds the facts relevant to the resolution of this motion to be as follows. On July 29, 1982, Bennett filed a nine count complaint alleging violations of federal and state securities laws, fraud, and breach of contract arising out of an alleged commercial venture involving the establishment of a corporation known as Circus U.S.A., Inc. In his complaint, Bennett alleges that he paid $60,000.00 to Burrell Cohen and Curtis Lentz to buy shares in the company, and sought $60,000.00 relief.

It was clear from the very beginning that Lentz and Cohen were not easy defendants to locate. The complaint specifically stated that the exact whereabouts of Lentz were unknown, and no proof of service on Lentz was filed with the Clerk of the court for some time. In fact, on December 22, 1982, the Clerk issued a Rule 27 notice, which warned of a potential dismissal for want of prosecution. Counsel for Bennett requested an additional 120 days because of an inability to find either Lentz or Cohen.

Sometime early in 1983, Attorney Clifford Holleran, who along with Mark Warsco was Bennett's counsel, discovered that the Nevada law firm of Allison, Brunetti, MacKenzie, Hartman, Soumbeniotis & Russell had represented Lentz in the past and had been authorized to accept service of process for Lentz. Holleran even telephoned the Allison, Brunetti firm to confirm the fact. Therefore, on March 29, 1983, Warsco sent a copy of the complaint and summons to the Allison, Brunetti's firm address, which was 402 Division Street, Carson City, Nevada. The letter was sent addressed to Lentz by certified mail, with return receipt requested. The return receipt was signed on April 4, 1983 by Jodie Knapp.

On April 19, 1983, Michael Pavlakis called Holleran from the Allison, Brunetti firm. In their conversation, which is confirmed both by a follow up letter sent by Pavlakis on April 20 and by Holleran's notes taken contemporaneously with the conversation, Pavlakis informed Holleran that Allison, Brunetti had represented the Curtis Lentz Corporation in other matters, and was a resident agent for service of process for the corporation, but not Lentz personally. Pavlakis expressed his belief that the service of process on Lentz was insufficient. Pavlakis also indicated that he had spoken with Cohen's attorney, Donald J. Regan, about a deal whereby Cohen would indemnify Lentz for any loss or liability arising out of the dealings with Bennett, and suggested that perhaps a settlement could be worked out. The April 20 letter closed with a request that Holleran inform Pavlakis if any action is taken against Lentz in Indiana.

Holleran's notes, affidavit and testimony, which the court specifically credits, present several additional facts about the April 19, 1983 phone conversation, which the court accepts as true. According to these facts, Pavlakis told Holleran that the Allison, Brunetti firm had received the complaint and summons and had forwarded them to Lentz, and that Lentz was aware of the complaint and had contacted the firm to seek representation on the matter. Holleran told Pavlakis that he would do what he had to do in order to collect the $60,000.00,

and that he would go forward with the suit in Indiana, strongly urging Pavlakis to enter an appearance in order to defend the action.

Additional evidence suggests that Lentz knew of the existence of the Bennett lawsuit. According to the affidavit of Gary Bennett, son of the plaintiff, Lentz contacted Gary in May, 1983 concerning a licensing agreement to make and sell T-shirts and other items for the band Led Zeppelin. Gary Bennett asked Lentz if he was aware of Carl Bennett's suit against him, and Lentz told Gary that he was aware of the suit. Further, Gary Bennett avers that William Lentz, the son of Curtis Lentz, told Gary that his father knew of the lawsuit against him.

On May 27, 1983, Warsco filed an affidavit of service on Lentz, to which he attached the return receipt card indicating that someone had accepted the letter at the 402 Division Street address. After Regan entered an appearance for Cohen, and a settlement between Cohen and Bennett fell through, Bennett obtained an entry of default against Lentz on January 5, 1984. After a hearing on Bennett's motion for a default judgment, at which neither defendant appeared, this court entered a default judgment against Lentz on February 17, 1984 in the amount of $60,000.00, with interest of $15,271.00 and attorneys fees of $8,385.00. Up to the time of the February 17, 1984 hearing, the Clerk of the court mailed a total of six documents to Lentz at the 402 Division Street address, without the return of a single letter to the Clerk as incorrectly addressed or unclaimed. The judgment was sent to Lentz by the Clerk as well. In addition, Bennett presented at the October 15, 1985 hearing a copy of a certified letter from Holleran to Lentz at the Division Street address notifying Lentz

of the default judgment. Attached to the exhibit is the return receipt card, indicating that the letter had been received at the Division Street address by Michele Bennett. Bennett then domesticated the judgment in North Carolina, where Lentz held some residential real estate. The property was set to be sold to satisfy the judgment when Lentz filed an appearance here and moved to set aside the default entered over two years before. On September 3, 1985, this court stayed the execution and proceedings supplemental pending the ruling on the motion to set aside the default.

■ Lentz offers two grounds for setting aside the default judgment. First, Lentz argues that he was never properly served with process, so that the judgment against him is void. The premise of this argument is that 402 Division Street in Carson City, Nevada was never his residence or place of business, and that the Allison, Brunetti firm was not his agent for service of process, so that he was never properly served under the applicable rules of service. Second, Lentz argues that Bennett attempted to deceive the court by certifying that service was proper when his attorneys knew that it was not because Pavlakis had told them so.[1]

■ Motions to set aside a judgment are governed by Rule 60(b) of the Federal Rules of Civil Procedure, which provides in pertinent part:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceedings for the following reasons: ... (4) the judgment is void ... (6) any other reason justifying relief from the operation of a judgment.

---

1. Although consideration of this second argument is unnecessary for purposes of deciding this motion, the court notes that no attempt to deceive the court can be gleaned from the Warsco affidavit of service. Bennett's counsel were not bound by Pavlakis' opinion as to the sufficiency of process; they could make an assessment of the sufficiency of process on their own and so represent their conclusion in an affidavit

to the court. The only possible confusion engendered by Warsco's affidavit is that it claims that process was delivered to Lentz' principal place of business, instead of Lentz' agent's address. Bennett's position throughout has been that service was had on Lentz' agent, and thus the naming of a different ground for finding proper service is more an honest mistake than any attempt at deception.

The Seventh Circuit has held that "[r]elief from a judgment under Rule 60(b) is an extraordinary remedy and is granted only in exceptional circumstances." *United States v. One 1979 Rolls-Royce Corniche Convertible*, 770 F.2d 713, 716 (7th Cir. 1985); *Ben Sager Chemical International v. Targosz & Co.*, 560 F.2d 805, 809 (7th Cir.1977). Generally, a movant must show three elements to obtain relief: (1) "good cause" for the default; (2) "quick action to correct it"; and (3) a "meritorious defense" to the complaint. *United States v. One 1979 Rolls-Royce Corniche Convertible*, 770 F.2d at 716; *Breuer Electric Mfg. Co. v. Tornado Systems of America, Inc.*, 687 F.2d 182, 185 (7th Cir.1982). While a district court generally has discretion under Rule 60(b), that discretion is sharply limited when the rationale for the Rule 60(b) motion is that the judgment is void:

> A motion to vacate a default judgment order pursuant to FCRP Rule 60(b) is addressed to the sound discretion of the trial judge unless the district court was powerless to enter the judgment in the first place. If the underlying judgment is void because the court lacked personal or subject matter jurisdiction ... the trial judge has no discretion and must grant appropriate Rule 60(b) relief.

*Textile Banking Co., Inc. v. Rentschler*, 657 F.2d 844, 850 (7th Cir.1981); *In re Four Seasons Securities Law Litigation*, 502 F.2d 834 (10th Cir.), *cert. denied*, 419 U.S. 1034, 95 S.Ct. 516, 42 L.Ed.2d 309 (1974).

Lentz' first argument concerns the sufficiency of the service of process. Lentz contends that he was never properly served, so that the court did not have jurisdiction over him at the time the default judgment was entered. When there is no valid service of process on a defendant, courts generally hold that the district court does not have jurisdiction over the defendant, so that a default judgment is void for purposes of Rule 60(b)(4). *See Armco, Inc. v. Penrod-Stauffer Bldg. Systems*, 733 F.2d 1087, 1089 (4th Cir.1984); *Varnes v. Local 91*, 674 F.2d 1365 (11th Cir.1982). The court must therefore examine the service over Lentz to determine whether proper service was had.

Service of process is governed by Rule 4 of the Federal Rules of Civil Procedure. Rule 4(d)(1) provides that the summons and complaint shall, with respect to an individual defendant who is not an infant or incompetent, be made as follows:

> by delivering a copy of the summons and of the complaint to him personally or by leaving copies thereof at his dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive such service of process.

In addition, Rule 4(c)(2)(C) allows service on a defendant by two methods. Rule 4(c)(2)(C)(i) allows service

> pursuant to the law of the State in which the district court is held for the service of summons or other like process upon such defendant in an action brought in the courts of general jurisdiction of that state ...,

while Rule 4(c)(2)(C)(ii) allows for service by first class mail, with an acknowledgement form which the defendant is to sign and return to the plaintiff. The affidavit of service filed by Warsco indicates that Bennett did not attempt a 4(c)(2)(C)(ii) service, so that the service on Lentz must qualify under 4(d)(1) or under some Indiana statute for service of process.

Given that 402 Division Street is the address of the Allison, Brunetti law firm, it appears obvious that the service mailed to that address could not have constituted the leaving of copies at Lentz' "dwelling house or usual place of abode" for purposes of Rule 4(d)(1). Thus, the only way Bennett's service can satisfy Rule 4(d)(1) is if the acceptance of the service documents by the Allison, Brunetti firm amounted to a delivery of the process to a qualified "agent."

■ The language of the Rule itself makes clear that the agent must have been "authorized by appointment or by law to

receive such service of process." Courts have consistently held that for an attorney to be considered an agent for process, he must have been appointed for that precise task. *Schultz v. Schultz*, 436 F.2d 635 (7th Cir.1971); *Gibbs v. Hawaiian Eugenia Corp.*, 581 F.Supp. 1269, 1271 (S.D.N.Y. 1984); *Miree v. United States*, 490 F.Supp. 768, 775 (N.D.Ga.1980); *United States v. Bosurgi,* 343 F.Supp. 815, 817 (S.D.N.Y. 1972); *Durbin Paper Stock Co. v. Hossain*, 97 F.R.D. 639 (S.D.Fla.1982). Courts will not consider the fact that the attorney represented the defendant in an unrelated matter as evidence of an appointment for service of process. *Maldonado v. Ramirez*, 757 F.2d 48, 51 (3d Cir.1985); *Schultz*, 436 F.2d at 639; *United States v. Marple Community Record, Inc.*, 335 F.Supp. 95, 101 (E.D.Pa.1971). While some courts have been willing to imply appointment after looking at the circumstances surrounding the attorney's activities, *see United States v. Balanovski*, 236 F.2d 298, 303 (2d Cir.1956); *Gibbs*, 581 F.Supp. at 1271; *Bosurgi*, 343 F.Supp. at 817, the Seventh Circuit has specifically called the concept behind such a methodology a "dubious assumption." *Schultz*, 436 F.2d at 637.

■ The affidavits of Pavlakis and Lentz both indicate that Lentz had not specifically appointed the Allison, Brunetti firm as his agent for service of process against him personally, and Bennett has offered no real evidence to the contrary. Thus, the evidence indicates that the mailing to the law firm could not have been service on Lentz' agent for purposes of Rule 4(d)(1). However, Bennett argues that the facts indicate that the Allison, Brunetti firm was representing Lentz on this matter, so that the firm was in fact an appointed agent for service of process. In support of this argument, Bennett points to the admission of Pavlakis in the April 19, 1983 phone conversation that he had forwarded the complaint and summons to Lentz, and the fact that Pavlakis stated both in the phone conversation and the April 20 follow up letter that he was conducting negotiations with Cohen's attorney over an indemnification

agreement concerning claims filed by Bennett.

■ Bennett's argument must fail for at least three reasons. First, the message of *Schultz* is clear: there must be evidence of an actual appointment and not merely an implication from the attorney's activities. Second, it is not at all clear that the Allison, Brunetti firm was actually retained by Lentz. The fact that documents are passed on to a client is often viewed as a professional courtesy or an attempt to secure future business (sometimes referred to as "primary professional functions," *see Commonwealth of Puerto Rico v. S.S. Zoe Colocotroni*, 628 F.2d 652, 668 (1st Cir.1980), *cert. denied*, 450 U.S. 912, 101 S.Ct. 1350, 67 L.Ed.2d 336 (1981); *Gibbs*, 581 F.Supp. at 1271), which does not amount to actual representation for purposes of determining agency for service of process. *See Gibbs*, 581 F.Supp. at 1271; *Marple Community Record*, 335 F.Supp. at 101–02. Even the negotiations with Cohen do not constitute evidence of Allison, Brunetti's employment for this particular case; Lentz may have decided to negotiate the indemnity agreement for reasons unrelated to the pending lawsuit. Finally, even if passing on the complaint and conducting the negotiations were somehow sufficient evidence of actual representation in this case, these acts do not amount to a level of involvement in the case from which one could imply an agency for service of process. The cases which have found service on an attorney sufficient because of his involvement in the litigation present significantly greater involvement by the attorney than is present here. *See e.g., Bosurgi*, 343 F.Supp. at 817–18 (attorney had been retained to file a lawsuit which sought the same escrow funds at heart of dispute in the litigation in which service was made); *In the Matter of Paddington Press, Ltd.*, 5 B.R. 343, 345 (Bkrtcy.S.D.N.Y.1980) (law firm had appeared and defended in main bankruptcy, so that service on attorney of documents in related adversary pleading was sufficient service). Even in those cases which recognized an implied appointment, the circum-

stances surrounding the attorney-client relationship suggested much greater involvement of the attorney than is present here. *See Balanovski*, 236 F.2d at 303 (broad power of attorney given to corporate secretary); *Durbin Paper Stock Co.*, 97 F.R.D. at 639 (attorney was also business agent of defendant); *United States v. Davis*, 38 F.R.D. 424, 425–26 (N.D.N.Y.1965) (broad power of attorney). Given the standards set forth in *Schultz*, this court simply cannot find an agency relationship in Allison, Brunetti's actions concerning the issues in this case.

■ A final ground for finding service on Lentz insufficient under Rule 4(d)(1) relates to Lentz' notice of the pending lawsuit. It is clear from the evidence that Lentz knew of this lawsuit, and it is very likely that he first learned of it when he received the copy of the complaint and summons forwarded to him by Pavlakis. At least one court has stated:

> When the process gives the defendant actual notice of the pendency of the action, the rules, in general, are entitled to a liberal construction. When there is actual notice, every technical violation of the rule or failure of strict compliance may not invalidate the service of process.

*Armco*, 733 F.2d at 1089. However, this liberal construction rule "cannot be utilized as a substitute for the plain legal requirement as to the manner in which service may be had." *United States v. Mollenhauer Laboratories, Inc.*, 267 F.2d 260, 262 (7th Cir.1959). Indeed, the *Armco* court held that the rules of service should be followed, and found no valid service of process despite the defendant's knowledge of the suit. The rationale behind this rule is that service of process serves a dual purpose: it gives the court jurisdiction over the person of the defendant as well as notifying him of the lawsuit. *See Milliken v. Meyer*, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1940); *F.D.I.C. v. Spartan Mining Co.*, 96 F.R.D. 677, 681 (S.D.W.Va. 1983), *aff'd*, 731 F.2d 1134 (4th Cir.1984). Precisely because of the court's need to get jurisdiction over the person of the defend-

ant, actual notice alone is insufficient to give the court the jurisdiction necessary to allow it to enter a judgment against a defendant. *Sieg v. Karnes*, 693 F.2d 803, 807 (8th Cir.1982); *Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir.1982); *Martin v. N.Y. State Dept. of Mental Hygiene*, 588 F.2d 371, 373 (2d Cir.1978); *Ransom v. Brennan*, 437 F.2d 513, 519 (5th Cir.), *cert. denied*, 403 U.S. 904, 91 S.Ct. 2205, 29 L.Ed.2d 680 (1971). Therefore, Lentz' knowledge of the pendency of this lawsuit cannot cure the deficiencies in service upon Lentz.

■ Rule 4(c)(2)(C)(i), which allows the application of state rules of service, offers Bennett no better grounds for proving proper service. The Indiana Trial Rule governing service of process on individuals is Trial Rule 4.1. That rule provides:

> (A) Service may be had upon an individual, or an individual acting in a representative capacity, by:
>
> (1) Sending a copy of the summons and complaint by registered or certified mail or other public means by which a written acknowledgement or receipt may be requested and obtained to his residence, place of business or employment with return receipt requested and returned showing receipt of the letter; or
>
> .    .    .    .    .
>
> (4) Serving his agent as provided by rule, statute or valid agreement.

Bennett does not contest, in light of the Pavlakis and Lentz affidavits, that 402 Division Street in Carson City, Nevada was not Lentz' residence, place of business or place of employment. The evidence shows that it is only the address of a law firm which represented Lentz on other matters. Thus, Bennett can show proper service only if he can establish that the Allison, Brunetti firm was Lentz' agent. Although Indiana law is silent on the sufficiency of service on an attorney, it is clear that notice to an attorney is imputed to a client only when the attorney is of record and has entered an appearance. *State ex rel. Brubaker v. Pritchard*, 236 Ind. 222, 138 N.E.2d 233, 235 (1956); *Smith v. Ind. State Bd. of Health*, 158 Ind.App. 445, 303

N.E.2d 50, 56 (1973), *cert. denied,* 419 U.S. 836, 95 S.Ct. 63, 42 L.Ed.2d 62 (1974). Yet, as noted above in connection with Rule 4(d), mere notice is insufficient because it does not fulfill the second function of service of process: giving the court jurisdiction over the person of the defendant. The court is convinced that the reasoning concerning service on attorneys set forth above applies with equal force under the Indiana statute—absent proof of an appointment to receive service of process, a court cannot find that a law firm which represented a defendant in the past and discussed the current case with him is thereby his agent for service of process. Bennett has simply failed to establish proper service under Indiana Trial Rule 4.1.

■ Bennett argues that the issue of proper service is immaterial because Lentz has waived his objection to the insufficiency of service by failing to appear and contest service when he had full knowledge of the pending action. Bennett points to Fed. R.Civ.P. 12(h)(1), which considers a defense of insufficiency of process waived if it is not included in a motion to dismiss under Rule 12. The argument is based exclusively on language in 5 *Wright & Miller, Federal Practice and Procedure,* § 1391, which argues that "[w]hen the party has received actual notice of the suit, there is no due process problem in requiring him to object to the ineffective service within the period prescribed by Rule 12(h)(1) and the defense is one that he certainly can waive if he wishes to do so." (1985 Supp.) It is essential to remember, however, that service of process serves a dual function of providing notice and jurisdiction over the person. The argument in *Wright & Miller* only implicates the notice aspect of service; it cannot be read as providing the court jurisdiction over the person in light of the strong rejection of the "notice alone is sufficient" argument found in the *Sieg, Jackson, Martin* and *Ransom* cases cited earlier. Further, even *Wright & Miller* admits that "[h]owever, if a party has never been served at all, he cannot be held to have waived his objection to lack of jurisdiction over the person ...." § 1391 (Main volume 1969).

Most importantly, the critical issue posed by Lentz' motion to vacate the default judgment is whether this court had jurisdiction over Lentz at the time the default was entered. Because the Allison, Brunetti firm was not Lentz' agent for service of process, the court must conclude that it did not have jurisdiction at the time of judgment. Whether or not Lentz may have waived his right to raise the defense of insufficiency of process is irrelevant to this court's jurisdiction, and Lentz' alleged waiver cannot cure this jurisdictional defect. Therefore, Bennett's waiver argument must fail.

The court therefore finds that the default judgment entered on February 17, 1984 was void because the court did not have jurisdiction over the person of Lentz due to ineffective service of process. The judgment must therefore be set aside.

This is a very close case. The evidence adduced at the October 15, 1985 hearing indicates that Lentz has been extremely delinquent; he knew of the lawsuit in 1983, yet waited almost two years to appear and challenge the suit against him. Although the court makes no specific finding on it, Bennett's characterization of Lentz' strategy as ignoring the lawsuits brought against him and responding only when his assets are actually in jeopardy, may not be far from the truth. But for the jurisdictional defect noted above, the court would not hesitate to deny the motion to vacate.

■ Rule 60(b) provides that a judgment may be vacated "upon such terms as are just." Bennett's counsel have been hunting for Mr. Lentz for several years now, and after considerable effort located the North Carolina real estate which would enable Bennett to satisfy his claim against Lentz. To simply grant the motion would allow the one asset Bennett had located to possibly be lost in the time before a valid judgment could be obtained, thereby wiping out Bennett's hard work. Justice requires that Lentz show his good faith in opposing this lawsuit by posting some kind of security. Surely, if Lentz has the meritorious defense he claims he has, he would not object to posting such security. In

fact, Lentz' counsel orally represented to the court a willingness to post a bond as a condition for setting aside the judgment at the October 15 hearing. In a letter to Bennett's counsel dated October 21, 1985 and attached to a letter from Bennett's counsel filed October 24, 1985, Lentz' counsel reiterated his willingness to post a bond, and in his response to the October 24, 1985 letter, Lentz' counsel represented to the court "[a]gain, I have no objection to the Court's imposition of a bond to protect Plaintiff in the event he is eventually successful." Letter from Ward Miller, filed November 4, 1985. Therefore, the court will require the posting of a bond as the "just terms" for vacating the default judgment. The amount of the bond, based upon the prayer for relief of $60,000.00, prejudgment interest of $30,000.00, and reasonable attorneys fees of $20,000.00, shall be set at $110,000.00. Said bond shall secure plaintiff with respect to any recovery he may make against Lentz in this action.

For the reasons set forth above, and subject to the requirement of the posting of a bond as set forth hereinabove, Lentz' motion to set aside the default judgment is hereby GRANTED and the default judgment entered on February 17, 1984 against Curtis Lentz is hereby VACATED.