TRIAD ENERGY CORP., Kevin Gross as Receiver for Everest Petroleum, Inc., and Everest Oil & Gas Drilling Program 1980, a Limited Partnership, Plaintiffs,

v.

Thomas McNELL, Samuel F. McNell European American Bank and Trust Company, Jean Marie Carson, William Hodgson, Marcro International Group, Inc., Margaret A. McNell, Mairi McNell, Thomas R. McNell, Lauren McNell, Ragan McNell, Victor McNell, Jean McNell, the Estate of Dennis McNell, M.B. Securities, Inc., Camp Woodlands Associates, a Limited Partnership and Bridgton Property Associates, a Partnership, Defendants.

No. 81 Civ. 5455 (SWK).

United States District Court, S.D. New York.

May 27, 1986.

Barry H. Singer, Cooper, Cohen, Singer & Ecker, New York City, for plaintiff.

Morton B. Dicker, New York City for defendants; Ann Moynihan, Renee Y. Chenault, Lynn Kelly, of counsel.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

Plaintiffs ("Triad") commenced the underlying suit for breach of various common law duties and violations of both the Racketeer Influenced and Corrupt Organizations Act of 1970, 18 U.S.C. §§ 1961 *et seq.* and the Securities and Exchange Act of 1934, 15 U.S.C. §§ 78a *et seq.* Triad sued Lauren, Victor and Ragan McNell ("defendants") for allegedly aiding their father, co-defendant Thomas McNell, in converting Triad's assets. On May 7, 1982, Judge Lee P. Gagliardi entered a default judgment for approximately $9,000,000 against all three children. On February 7, 1985, Lauren filed a motion pursuant to Fed.R.Civ.P. 60(b)(4) to vacate the judgment. Victor and Ragan filed a similar motion[1] on February 22, 1985. For the reasons and on the conditions stated below, defendants' motions are GRANTED.

---

1. Both Victor and Ragan moved to have their defaults set aside pursuant to Fed.R.Civ.P. 55(c). Victor also moved to set aside the default judgment pursuant to Rule 60(b). Although Ragan does not cite to Rule 60(b), she also moves to vacate the default judgment. Thus, her motion will be reviewed pursuant to Rule 60(b).

Ragan also mentions that this Court cannot exercise long arm jurisdiction over her pursuant to CPLR § 302. In light of this Court's disposition, this argument need not be addressed now.

Defendants allege that the default judgment is void for lack of personal jurisdiction since service was improper. Conversely, Triad claims that service was properly executed pursuant to New York Civil Practice Law and Rules (CPLR) § 308(2).[2] Triad also argues that the instant motions cannot be entertained since the movants have not acted timely, had actual notice of the underlying suit and prevented Triad from discovering their whereabouts.

## FACTUAL BACKGROUND

On September 5, 1981, Triad arranged for the delivery of the summons and complaint to the defendants' aunt, Pat Copeland, at her home in Orinda, California. Copies of the summons and complaint were mailed to Ms. Copeland's address on September 7, 1981. Triad believed that the defendants were living with their aunt in September, 1981 and that Ms. Copeland's residence was the defendants' last known address.

Triad's belief that the defendants were living with their aunt was apparently based on two phone calls made by a Triad Director, Drury Gallagher, two months before the September service. In early July, 1981, Gallagher spoke with the defendants' mother, Jean McNell, who stated that her children were "temporarily residing" with Ms. Copeland. Later that month, Gallagher phoned the Copeland residence and spoke to Victor McNell, who allegedly stated that he and his sisters were staying with their aunt.

However, all three children insist that they were not residing with their aunt in September, 1981, when service was allegedly made. Lauren and Victor McNell claim that they never resided with their aunt before the instant suit began, and were attending Western State College in Gunnison, Colorado in September, 1981.[3] Lauren claims she resided in Connecticut during the summer of 1981 and that she never lived in California. Before moving to Colorado, Victor alleges that he resided in Queens, New York, with his father. Although Victor visited his aunt in July, 1981, he claims never to have "resided" with her. Finally, Ragan McNell, who was 15 years old at the time of service, claims that she was living with her mother in Marblehead, Massachusetts, in September, 1981.

## DISCUSSION

Motions to vacate default judgments are to be granted liberally, so that a trial on the merits may be had and justice done. *Leab v. Streit,* 584 F.Supp. 748, 754 (S.D.N.Y.1984); *Cf. Davis v. Musler,* 713 F.2d 907, 916 (2d Cir.1983) (default judgments are extreme sanctions to be used as a weapon of last resort). In considering such motions, all doubts must be resolved in favor of the movants. *Davis,* 713 F.2d at 915. *Cf. Sony Corp. v. S.W.I. Trading, Inc.,* 104 F.R.D. 535, 539–40 (S.D.N.Y.1985). Motions to vacate default judgments are usually addressed to the sound discretion of the trial judge. *Davis,* 713 F.2d at 912; *Leab,* 584 F.Supp. at 754. When a judgment entered against the movant is void, however, the Court has no discretion. Instead, the Court is compelled to grant the motion since a void judgment cannot be enforced. *Textile Banking Co. v. Rentschler,* 657 F.2d 844, 850 (7th Cir.1981); *Martocci v. Oceanus Mutual Underwriting Assoc.,* No. 84–1025, slip op. (S.D.N.Y. April 3, 1985). [Available on WESTLAW DCTU database.]

---

**2.** CPLR § 308(2) provides that the summons must be delivered to a "person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served" and mailed to the "person to be served at his last known residence." This provision, along with CPLR § 309 (discussed below) must be read in conjunction with CPLR § 313, which governs service "without the state."

**3.** Victor has submitted his class registration form, which shows that he was to enter school on September 1, 1981. Additionally, Victor has submitted the sworn affidavit of Mary Lynn Tolle, who states that she saw Victor in late August, 1981 at Western State College and "that [Victor] was signing up for classes" at that time. Lauren has submitted the sworn affidavit of Pat Copeland, who states that Lauren never lived at her home in Orinda, California.

■ With these principles in mind, the Court turns to the parties' claims. Triad's argument that the defendants' motions were not brought within the "reasonable time" limit mentioned in Fed.R.Civ.P. 60(b) is without merit. The "reasonable time" limitation "does not apply to a motion under clause (4) attacking a judgment as void." *Practical Concepts, Inc. v. Republic of Bolivia,* 613 F.Supp. 863, 866 (D.C.D. C.1985). *See also Austin v. Smith,* 312 F.2d 337, 343 (D.C.Cir.1962) (Void judgments cannot gain validity by the passage of time.). Thus, a movant may challenge a void judgment under Rule 60(b)(4) at any time.[4] *Cf. Klapprott v. United States,* 335 U.S. 601, 69 S.Ct. 384, 93 L.Ed. 266 (Rule 60(b)(4) motion entertained more than four years after judgment entered), *modified,* 336 U.S. 942, 69 S.Ct. 384, 93 L.Ed. 1099 (1949); *Rohm & Haas Co. v. Aries,* 103 F.R.D. 541 (S.D.N.Y.1984) (Rule 60(b)(4) motion entertained almost 20 years after judgment entered). Thus, the instant motion is properly before this Court.

■ A "void" judgment is one where, *e.g.,* the Court lacked personal or subject matter jurisdiction or the entry of the order violated due process. *Textile Banking,* 657 F.2d at 850. *See also Klapprott,* 335 U.S. 601, 69 S.Ct. 384, 93 L.Ed. 1099 (due process); *Collins v. Foreman,* 729 F.2d 108 (2d Cir.), *cert. denied,* 469 U.S. 870, 105 S.Ct. 218, 83 L.Ed.2d 148 (1984) (subject matter jurisdiction); *Martocci,* No. 84–1025, slip op. (S.D.N.Y. April 3, 1985) (personal jurisdiction) [available on WESTLAW DCTU database]; *Restatement (2d) Judgments* § 65 (1982 with 1986 Supplement).

■ When either subject matter or personal jurisdiction is contested under Rule 60(b)(4), the burden of proof is properly placed on the party asserting that jurisdiction existed. *See, e.g., Leab,* 584 F.Supp. at 760 (personal jurisdiction); *Lackawanna Refuse Removal Inc. v. Proctor and Gamble Paper Products Co.,* 86 F.R.D. 330, 332 (M.D.Pa.1979) (subject matter jurisdiction); *Rockwell International Corp. v. KND Corp.,* 83 F.R.D. 556, 559 n. 1 (N.D.Tex. 1979) (personal jurisdiction). *But see Rohm & Haas Co.,* 103 F.R.D. at 544 (burden on movant where default attacked on jurisdictional grounds almost 20 years after entry of judgment, movant's testimony lacked credibility, and trial court made a specific finding that it had jurisdiction).

Defendants maintain that Triad failed to serve them properly pursuant to CPLR § 308.[5] If service upon a defendant is later found to be defective, Courts generally hold that the district court does not have jurisdiction over the defendant; if a default judgment has been entered, it is void under Rule 60(b)(4). *See Bennett v. Circus U.S.A.,* 108 F.R.D. 142, 146 (N.D.Ind.1985) (and cases cited therein). Since adequacy of service is one element of personal jurisdiction, *see Martocci,* No. 84–1025, slip op. [available on WESTLAW DCTU database], if Triad fails to show that defendants were properly served, the $9,000,000 default judgment is void and must be vacated.

■ The Court finds that Lauren and Victor were not properly served under CPLR § 308(2). That section requires that the summons be delivered to the defendant's actual dwelling place or usual place of

4. In extreme situations, not existing here, a reasonable time limit may be imposed to prevent undue prejudice to the plaintiff. *See, e.g., International Controls Corp. v. Vesco,* No. 73–2518, slip op. (S.D.N.Y. Feb. 1, 1978) (Movant's Rule 60(b)(4) motion brought 4½ years after judgment held to be untimely due to "exceptional circumstances surrounding the case", including movant's failure to raise the Rule 60(b)(4) claim in a prior Rule 60(b) motion and his piecemeal attack on service of process).

5. In support of its proposition that New York law governs the manner of service, Triad cites

*Davis,* 713 F.2d at 914. However, in *Davis,* jurisdiction was based on diversity of citizenship. In such instances, process may only be served in the manner prescribed by the forum state. *See Catalyst Energy Development Corp. v. Iron Mountain Mines, Inc.,* 108 F.R.D. 427, 428 (S.D.N.Y.1985), *citing, Davis,* 713 F.2d at 914. Since federal question jurisdiction lies in this action, service could have been made pursuant to the federal rules. *See* Fed.R.Civ.P. 4(e). However, Triad does not claim that service was effectuated pursuant to the federal rules. Accordingly, the Court does not address that issue.

abode and mailed to the defendant's last known address. Lauren and Victor have submitted sworn affidavits supporting their claim that they were residing in Colorado on the day of service. Triad has not disproved this claim. Whether Lauren or Victor had ever "resided" with Ms. Copeland is irrelevant, since they were not residing there on the day of service.[6]

■ Triad also failed to serve Ragan properly under CPLR § 309.[7] That section, which governs service of persons under 18 years of age, requires that the minor's parent (or if the parent is not within the state of service, the person with whom the minor resides) be personally served. Furthermore, section 309 requires that a minor of 14 years or more be personally served. While it is unclear where Ragan was living on September 5, or who had custody over her at that time, it is undisputed that Ragan was not personally served. Therefore, service was not properly executed upon Ragan under CPLR § 309.

■ Since service was not properly made on any of the movants, the judgment rendered against them is void. Any notice, constructive or actual, which the defendants had of this suit does not render the void judgment valid. *See Leab*, 584 F.Supp. at 760 (improper service not remedied by actual knowledge of suit). A defendant has no duty to respond to a Court which lacks jurisdiction over him. *Martocci*, No. 84–1025, slip op. (S.D.N.Y. April 3, 1985) [available on WESTLAW, DCTU database]; *Cf. Practical Concepts, Inc*, 613 F.Supp. at 866 ("... a defendant who questions a court's jurisdiction over him is free to ignore the suit and attack the default judgment in a subsequent proceeding, pro-

vided, of course, that he is willing to undertake the risks associated with that tactic.")

■ Furthermore, Triad's argument that the defendants prevented Triad from discovering them is meritless. Triad relied solely on phone calls made two months prior to service to determine the movants' whereabouts. None of the defendants had a duty to keep Triad abreast of their whereabouts and Triad has failed to prove that Lauren and Victor made a "calculated effort" to prevent Triad from learning their true whereabouts. *See Feinstein v. Bergner*, 48 N.Y.2d 234, 241–42, 422 N.Y.S.2d 356, 360, 397 N.E.2d 1161, 1164 (1979); *Community State Bank v. Haakonson*, 94 A.D.2d 838, 839, 463 N.Y.S.2d 105, 106 (3d Dept.1983).

Rule 60(b) provides that a judgment may be vacated "upon such terms as are just." Thus, a trial court may impose certain conditions on the parties in conjunction with granting of a Rule 60(b) motion. *See, e.g., Hritz v. Woma Corp.*, 732 F.2d 1178 (3d Cir.1984) (defaulting party may be forced to waive statute of limitations defense); *Bennett v. Circus U.S.A.*, 108 F.R.D. 142 (N.D.Ind.1985) (defaulting party required to post security). *Cf. Oliner v. McBride's Industries, Inc.*, 102 F.R.D. 561, 563 (S.D. N.Y.1984) (In Rule 55(c) motion, defaulting party must reimburse opponent for costs of finding the defendant and serving the notice of default). These conditions are imposed to remedy prejudice which the nondefaulting party suffered as a result of the default or the granting of the motion. *Oliver*, 102 F.R.D. at 563–64. Triad is hereby instructed that, if it chooses to attempt service again, service may be affected by delivering a copy of the summons and complaint to the defendants' attorneys pursuant to CPLR § 308(5). *See Leab*, 584

---

**6.** Nor have the defendants "temporarily" resided at Ms. Copeland's home. Although in some instances, a temporary residence may constitute a "usual place of abode" within the meaning of CPLR § 308(2), a sense of permanency, absent here, is required. *See Smithtown General Hospital v. Quinlivan*, 88 Misc.2d 1031, 1033, 389 N.Y.S.2d 776, 777 (3d Dist.1976).

**7.** CPLR § 309(a) provides that personal service upon an infant "shall be made by personally serving the summons within the state upon a parent or any guardian or any person having legal custody ... or, if none are within the state, upon any other person with whom he resides, or by whom he is employed. If the infant is of the age of fourteen years or over, the summons shall also be personally served upon him within the state."

F.Supp. at 763 (Court designated movant's attorney as agent for service of process in accordance with power granted under CPLR § 308(5)).

SO ORDERED.