ARTHUR F. WILLIAMS, INC., Arthur F. Williams, and Helen D. Williams, Plaintiffs,

v.

George L. HELBIG, Joanne Helbig, Bernard Mondry and J.P. Karl, Inc., Defendants.

No. 01–CV–4448 (ILG).

United States District Court, E.D. New York.

June 19, 2002.

Marvin E. Kramer, Marvin E. Kramer & Associates, Garden City, NY, for plaintiffs.

## MEMORANDUM AND ORDER

GLASSER, District Judge.

### SUMMARY

Plaintiffs Arthur F. Williams, Inc. ("Williams, Inc."), Arthur F. Williams ("Arthur"), and Helen D. Williams ("Helen") (collectively the "Williams plaintiffs" or the "plaintiffs") move the Court, pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, for a Default Judgment against defendants George Leonard Helbig ("George") and Joanne Helbig ("Joanne") (collectively the "Helbig defendants" or the "defendants").[1] For the reasons that follow, the motion is denied.

### BACKGROUND

This case arises out of matters concerning Old Harlem Fuel Oil Corp. ("Old Harlem"), a New York corporation in the business of selling diesel fuel. (*See* Compl. ¶ 10.) According to the complaint, Arthur, George, and non-party Adonis Morfesis ("Morfesis")[2]

---

1. Plaintiffs concede that they have not effected service on defendants Bernard Mondry and J.P. Karl, Inc. and, accordingly, they do not seek default judgments against them. (*See* Marvin E. Kramer Affirmation ("Kramer Aff.") ¶ 1.)

2. According to plaintiffs, Morfesis is not a party because he is bankrupt and received a discharge to that effect. (*See* Compl. ¶ 45.)

were the officers, directors and employees of Old Harlem, and each owned one-third of the corporation's stock. (*Id.* ¶¶ 1, 8, 10, 11.) Williams, Inc. is a New York corporation, owned entirely by Arthur, which supplied heating oil and diesel fuel to Old Harlem. (*Id.* ¶ 8.) Helen Williams is Arthur's wife and the personal guarantor of certain debts of Williams, Inc. (*Id.* ¶ 9.) Joanne Helbig is George's wife, and allegedly the recipient of checks made by Old Harlem. (*Id.* ¶ 16.)

On July 3, 2001, plaintiffs commenced this action, alleging that defendants and others,[3] diverted assets of Old Harlem to their own benefit and to the detriment of plaintiffs and conspired to do the same, in violation of the civil RICO Act, common law fraud, and various state fraud statutes. (*Id.* ¶¶ 106–39.) The complaint alleges that the various illegal schemes occurred from August through November 1994. (*Id.* ¶ 7.)

On August 4, 2001, plaintiffs personally served George at his residence with the summons and complaint, and served Joanne by leaving a copy of same with George at their joint residence and by sending an extra copy by certified mail. (*See* Kramer Aff. ¶ 8.) Affidavits of Service for George and Joanne were filed with the Court on August 15, 2001. (*See* Affidavits of Service, attached to Kramer Aff. as Ex. A.) Having failed to answer the complaint, on October 25, 2001, plaintiffs served Notices of Default on defendants, informing them that unless an answer was received within thirty days, they would seek judgment by default. (*See* Kramer Aff. ¶ 9.) Plaintiffs mailed copies of the Notices of Default, the Summons and Complaint and the Affidavits of Service to defendants' attorney, Pamela Roth.[4] (*Id.*) After nearly three weeks had passed with no answer, plaintiffs again wrote to defendants' attorney by certified mail, advising her that they would move for a default judgment after the Thanksgiving holiday. (*See* Letter, dated Nov. 14, 2001, attached to Kramer Aff. as part of Ex. C.) The certified return receipt indicated that Roth received this letter on November 16, 2001. (*See* Return Receipt, attached to Kramer Aff. as part of Ex. C.)

Nearly five months later, having received no response from defendants or Roth, plaintiffs requested that the Clerk of the Court enter the default. The default was noted on April 9, 2002. (*See* Notation of Default, Apr. 9, 2002). Plaintiffs now move the Court for entry of a default judgment against the Helbigs.

On May 1, 2002, defendants filed opposition papers, including a letter and a detailed affirmation from Roth and several exhibits. Roth asserts that plaintiffs have misrepresented facts to the Court and willfully failed to mention four related actions which, she asserts, are either still pending or have disposed of issues directly related to this case.[5]

---

**3.** The "others" include: Morfesis, Gerald Cavallo (now deceased), an alleged Old Harlem customer and purchaser of fuel products, John Falzone, Old Harlem's attorney, Paul Clemente, Cavallo's attorney, and Pamela Roth, the Helbig defendants' attorney. (*Id.* ¶ 1.)

**4.** Roth had represented defendants in an earlier related action filed in the Southern District of New York, and had informed plaintiffs' counsel by telephone in July 2001 that she would appear on behalf of defendants in this action. (*See* Pamela S. Roth Affirmation ("Roth Aff.") ¶ 50.)

**5.** The four prior actions include the following: In May 1995, Cavallo (one of the non party participants alleged in the complaint) commenced an action in this Court before the late Honorable Eugene H. Nickerson against Old Harlem, alleging breach of contract claims. *See Cavallo v. Old Harlem,* No. 95–CV–1124 (E.D.N.Y.1995). That action was first stayed pending a determination in a related state court case, whereby Arthur sought to dissolve Old Harlem, *see Application of Arthur Williams,* Index No. 115697–95 (N.Y.Sup. Ct.1995), and ultimately discontinued by stipulation and order, *see Cavallo v. Old Harlem,* No. 95–CV–1124, Stip. and Order, dated Jun. 30, 1997. After extensive litigation in the state court dissolution proceeding, which, according to Roth, included litigation of Cavallo's claims, the matter was marked off calendar in January 1997 without resolution. (*See* Order, dated Jan. 14, 1997, attached to Roth Aff. as Ex. 7.) In 1998, Arthur subsequently sought to reinstate the state court proceeding. (*See* Mot. to Reinstate, dated Jul. 29, 1998, attached to Roth Aff. as Ex. 8). Whether this was done is unclear; however, according to Roth, that action was reinstated and is currently pending.

In January 1996, defendant George brought a breach of contract and fraud action in the state court against plaintiffs Arthur and Morfesis, based on Williams, Inc.'s alleged breach of contract. *See Helbig v. Williams,* Index No. 600450–96 (N.Y.Sup.1996). The current status of this

(*See* Pamela S. Roth Letter ("Roth Letter"); Roth Aff. ¶¶ 18–25.) She intimates that plaintiffs commenced this action in an attempt to circumvent the Southern District court's ruling, *see supra* at n. 6, which dismissed the complaint against these defendants, albeit, without prejudice. (*Id.*) Roth does not deny that she was notified by plaintiffs on several occasions about the pendency of this action, but provides no explanation whatsoever for why she failed to respond until now.[6]

Defendants raise two affirmative defenses, although they provide no authority to support them. First, they argue that the Court lacks personal jurisdiction based on a conclusory assertion that personal service was never effected. (*See* Roth Aff. ¶ 18.) Second, they argue that the action is barred by the statute of limitations. (*Id.* ¶ 17.) In addition to dismissal of the action, defendants seeks sanctions and costs based on the allegedly "contumacious, knowingly false . . . . frivolous conduct and misrepresentations made upon the Court" by plaintiffs. (*Id.*)

In reply to defendants' opposition, plaintiffs assert, *inter alia*, that they decided in good faith to file a new action in this Court after the Southern District case was dismissed without prejudice, based on venue being more proper here. (*See* Reply Affirmation ¶ 1.) In addition, they assert that the other actions are not relevant as they did not involve the same issues or the same parties.[7] Moreover, while they insist that service was proper, they say nothing about defendants' statute of limitations defense.

---

case is also not clear. Then, in March 2000, the Williams plaintiffs commenced an action against the same defendants herein in the Southern District of New York, alleging the same RICO and fraud claims. *See Williams v. Helbig*, No. 00–CV–2169 (S.D.N.Y.2000). That action was subsequently dismissed without prejudice in January 2001, apparently based on plaintiffs' inability to effect service of process. *See* Order, dated Jan. 18, 2001, attached to Roth Aff. as Ex. 6. Although Roth alleges that plaintiffs failed to disclose this case to the Court, plaintiffs' attorney does mention it in his affirmation in support of the motion for default, at ¶ 9.

6. Roth also advises the Court that she is currently seven months pregnant, and the "frivolous

Meanwhile, the attorneys for both parties have appeared twice since the filing of plaintiffs' motion.

## DISCUSSION

### I. Standard for Entry of a Default Judgment

Rule 55(b) of the Federal Rules of Civil Procedure provides in part:

> Judgment by default may be entered as follows:
>
> (2) By the Court . . . . [T]he party entitled to a judgment by default shall apply to the court therefor . . . . If the party against whom judgment by default is sought has appeared in the action, the party . . . shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application.

Rule 55.2(b) of the Civil Rules for the Southern and Eastern Districts of New York requires a party seeking a judgment by default to obtain a clerk's certificate of default, and to attach it and a copy of their pleadings to the motion. Plaintiffs have complied with these procedural requirements.

██ In determining whether to enter a default judgment here, this Court is mindful of the preference for district courts "to reach judgments on the merits and not by way of default judgments." *Shah v. N.Y. State Dep't of Civil Serv.*, 168 F.3d 610, 615 (2d Cir.1999) (citations omitted); *accord Cody v. Mello*, 59 F.3d 13, 15 (2d Cir.1995); *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir.1993). The Second Circuit has stated

---

conduct" of plaintiffs in this matter has affected her solo law practice and her professional life. (*See* Roth Letter.)

7. Although it is difficult to ascertain the precise issues in those cases, one of the allegedly illegal schemes in the present complaint involves Cavallo. The complaint alleges that Cavallo was a phantom created by defendants for the purpose of defrauding Williams, Inc. during the relevant time period—August 1994 through November 1994. (*See* Compl. ¶¶ 83–92.) Cavallo's 1995 breach of contract complaint involves the same time period, thus implying that the actions are related. (*See* 1995 Compl., attached to Roth Aff. as Ex. A.)

that a default judgment is an "extreme sanction," which "must remain a weapon of last, rather than first resort." *Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir.1981); *Marfia v. T.C. Ziraat Bankasi, N.Y. Branch*, 100 F.3d 243, 249 (2d Cir.1996) (quoting *Indep. Prods. Corp. v. Loew's Inc.*, 283 F.2d 730, 733 (2d Cir.1960)) (entry of a default judgment is a "drastic remed[y], and should be applied only in extreme circumstances."). For this reason, any doubt as to whether a default judgment should be entered must be resolved in favor of the opposing party. *Enron Oil*, 10 F.3d at 96.

The entry of a default judgment is entrusted to the sound discretion of the district court. *Id.* at 95. Where, as here, a defendant opposes a motion for a default judgment, the Court should consider three factors: (1) whether and to what extent the default was willful; (2) whether defendants have a meritorious defense; and (3) whether the adversary would suffer prejudice if the default were set aside.[8] *Credit Lyonnais Secs. (USA), Inc. v. Alcantara*, 183 F.3d 151, 154 (2d Cir.1999); *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir.1998); *Snall v. City of N.Y.*, No. 97–CV–5204, 1999 WL 1129054, at *2 (E.D.N.Y. Oct. 19, 1999).

## II. *Entry of a Default Judgment Should Be Denied*

Defendants' default was undoubtedly willful. However, in light of their meritorious defense based on the statute of limitations, the absence of any risk of prejudice to plaintiffs, and the clear preference for a decision on the merits, this Court is driven to conclude that a default judgment should not enter.

## A. *Willfulness of the Default*

"Willfulness in the context of a default [is] conduct that is more than merely negligent or careless." *McNulty*, 137 F.3d at 738. The conduct of counsel or the litigant must be "egregious and ... not satisfactorily explained." *Id.; Am. Alliance Ins. Co. v. Eagle Ins., Co.*, 92 F.3d 57, 60–61 (2d Cir.1996). Bad faith is not required for a finding of willfulness; "it is sufficient that the defendant defaulted deliberately." *Gucci Am., Inc., Guess, Inc. v. Gold Ctr. Jewelry*, 158 F.3d 631, 635 (2d Cir.1998).

Neither defendants nor counsel have provided any explanation for the default. Defense counsel admitted to having told plaintiffs' counsel in July 2001 that she would appear in this action, and she undoubtedly received plaintiffs' notices relating to service and their intention to seek a default judgment against her clients. Notwithstanding counsel's apparent frustrations with plaintiffs and her anger at having been accused of wrongdoing, she should have responded to plaintiffs' notice and her unexplained failure to do so for at least six months is properly characterized as willful.

## B. *Meritorious Defense*

"[T]o make a sufficient showing of a meritorious defense ... defendant need not establish his defense conclusively, but must present evidence of facts that if proven at trial, would constitute a complete defense." *McNulty*, 137 F.3d at 740 (internal quotation marks and citations omitted). Defendants argue that the statute of limitations bars this case. The statute of limitations for a civil RICO claim is four years. *See Rotella v. Wood*, 528 U.S. 549, 553, 120 S.Ct. 1075, 145 L.Ed.2d 1047 (2000). The complaint alleges

---

**8.** However, where service of process has not been properly effected, the court lacks personal jurisdiction over the defaulting defendants, and a default judgment against them would be void. *See, e.g., United States v. Folabit*, No. 99–CV–857, 2001 WL 1776156, at *2 (E.D.N.Y. Nov. 30, 2001) (citation omitted); *United States v. Cally*, 197 F.R.D. 27, 28 (E.D.N.Y.2000); *Triad Energy Corp. v. McNell*, 110 F.R.D. 382, 385 (S.D.N.Y. 1986). A properly filed Affidavit of Service is *prima facie* evidence that service was properly effected. *Howard Johnson Intern., Inc. v. Wang*, 7 F.Supp.2d 336, 339 (S.D.N.Y.1998); *Engel v.*

*Lichterman*, 62 N.Y.2d 943, 944, 479 N.Y.S.2d 188, 189, 468 N.E.2d 26 (1984) ("A properly executed affidavit of service raises a presumption that a proper mailing occurred."). Defendants' failure to support their conclusory assertion that service was improper or to refute the Affidavits of Service leads to the conclusion that service here was proper. *See Remington Invs., Inc. v. Seiden*, 240 A.D.2d 647, 647, 658 N.Y.S.2d 696, 697 (2d Dep't 1997). Thus, the Court does not lack personal jurisdiction over these defendants by virtue of ineffective service of process.

that the relevant acts ended in November 1994 (*see* Compl. ¶ 7), thereby giving plaintiffs until November 1998 to file their complaint. However, plaintiffs filed their complaint in July of 2001. Thus, defendants' defense is "potentially viable," and therefore adequate to defeat entry of a default.[9] *Snall,* 1999 WL 1129054, at *2.

### C. *Prejudice to Plaintiffs*

To establish prejudice in the context of a default, there must be a showing that "the delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Davis v. Musler,* 713 F.2d 907, 916 (2d Cir.1983). Plaintiffs do not contend that they will be prejudiced in any of these ways nor does the record support such a finding.

For the reasons stated, plaintiffs' motion for a default judgment is denied.

SO ORDERED.

---

**9.** Defendants also suggest that the action is barred by principles of *res judicata.* However, there is no indication that the claims and issues involved in this case were ever adjudicated on the merits or dismissed with prejudice in the prior actions. *See Federated Dept. Stores, Inc. v.* *Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981) ("A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."). Accordingly, this defense is not potentially meritorious.