STATE OF MAINE                                    SUPERIOR COURT
                                                    CIVIL ACTION
YORK, ss.                                  DOCKET NO. CV-08-203
                                                  ᴄⱡᴊᴾ ·ᵞᴏⱡ⁻


TRIPLE G SCAFFOLD SERVICES
CORPORATION,

                Plaintiff


        v.                                         ORDER


WT ENTERPRISES,
d/b/a WOODWARD THOMSEN
COMPANY

        and

THOMAS W. THOMSEN,

                Defendants


        Defendant Thomas W. Thomsen's Motion to Vacate the Default Judgment

entered on August 15, 2008 is before the Court. Thomsen brings this Motion pursuant to

Maine Rules of Civil Procedure 55(c) and 60(b), arguing that the Judgment is void for

inadequate service of process, or in the alternative that his neglect in answering the

Complaint against him is excusable and that he has a meritorious defense to the

allegations therein.

## BACKGROUND

        Thomas W. Thomsen (Defendant) resides at 188 Danforth Street, Portland,

Maine. Thomsen Aff. ¶¶ 2–3. In 1976 Defendant and a partner formed Woodward

Thomsen Co., Inc., a general contracting and millwork fabricating company. *Id.* at ¶ 4. It

appears that in August 2004 Woodward Thomsen Co., Inc., sold all of its assets to CLRS

Enterprises. *Id.* at ¶¶ 4–5. As a result of this deal Woodward Thomsen Co., Inc.,

changed its name to WT Enterprises, Inc., and ceased to operate as an ongoing construction company. *Id.* at 4–6. At this same time CLRS Enterprises became CLRS Enterprises, Inc., d/b/a Woodward Thomsen Co. (CLRS). *Id.* Defendant testifies that within two months of the sale, new financial statements for CLRS were issued and notice was sent to all subcontractors and suppliers who had done business with Woodward Thomsen Co, Inc.[1] *Id.* at ¶ 6. This notice allegedly informed its readers of the business's sale and new ownership structure, and confirmed that all accounts were paid and due. *Id.* Defendant also testifies that he was neither an officer, director, nor shareholder of CLRS, but did become a project supervisor in CLRS's employ. *Id.* at ¶ 5.

Plaintiff Triple G Scaffold Services Corp. (Plaintiff) has been a supplier to Woodward Thomsen Co., Inc. since 1998. Grigas Aff. ¶ 2. In 1998 Defendant filled out a credit application with Plaintiff on Woodward Thomsen Co., Inc.'s behalf. Pl.'s Complaint Exhibit B. As part of this credit application Plaintiff became a guarantor for Woodward Thomsen Co., Inc.'s obligations to Defendant. *Id.* Robert Grigas, president of the plaintiff corporation, testifies that Defendant never attempted to revoke his guaranty. Grigas Aff. ¶ 5.

In early 2007 Plaintiff both performed services for and rented scaffolding to Woodward Thomsen Co., Inc., at a total cost of $14,568.30. Pl.'s Complaint Exhibit A. This bill was never paid. *Id.* at ¶ 10. On July 16, 2008 Plaintiff filed a four-count Complaint against WT Enterprises and Defendant in his individual capacity, seeking to collect from the WT Enterprises for breach of contract, from Defendant on his guaranty, and from both for violation of Maine's "Prompt Payment Act," 10 M.R.S.A. § 1111 et seq.

---

[1] Robert Grigas, president of plaintiff Triple G Scaffold Services Corp., denies knowledge of any notice letter or other communication indicating a change in Woodward Thomsen Co., Inc.'s ownership. Grigas Aff. ¶¶ 1, 4.

CLRS maintains its office at 50 Danforth Street, Portland, Maine. Thomsen Aff. ¶ 9. On July 28, 2008 a deputy sheriff went to that address to serve the complaint and summons on Defendant. In the return of service filed on August 1, 2008, the deputy did not indicate that he had served Defendant in-hand. Rather, the deputy checked the box for "other manner of service" and wrote:

> Drop Service. Subject walked out of the room after telling me he would be right back but didn't return. He was I.D. by me visually.

What actually happened at 50 Danforth Street on July 28 is subject to dispute. In his affidavit, the deputy testifies:

> I entered the building and stood at the counter, when I saw [Defendant]. He recognized me, but I told him who I was and why I was there. He told me he would be right back.

> I waited for a short while and realized he would not be coming back; therefore, I left the summons at the office.

Rinaldi Aff. ¶¶ 3–4. Defendant describes the interaction differently, stating:

> While walking through the office . . . I saw an individual enter the office from the street and look around for assistance as [the receptionist] was not at her desk.

> Without giving it much thought, I told him that someone would be right there to assist him, and then proceeded through the shop . . . .

Thomsen Aff. ¶¶ 18–19. Defendant claims that nothing had been left for him when he returned to the office later that day, and that he never received any communication about Plaintiff's action. *Id.* at ¶¶ 22–25.

Neither Defendant nor WT Enterprises filed a response to Plaintiff's Complaint, and on August 25, 2008 default judgments were entered against both defendants in the amount of $14,568.30. On October 21, 2008, writs of execution issued in the amount of $15,295.18. On May 20, 2009, Defendant filed this Motion to Vacate the Default Judgment.

3

## DISCUSSION

A default judgment must be set aside if void, and may be set aside on a showing of both excusable neglect and the existence of a meritorious defense. M.R. Civ. P. 55(c), 60(b); *Boyer v. Boyer*, 1999 ME 128, ¶ 6, 736 A.2d 273, 275; *Thomas v. Thompson*, 653 A.2d 417, 419–20 (Me. 1995). The moving party bears the burden of proof, and a court's decision to grant or deny the motion will be reviewed for abuse of discretion on appeal. *Foley v. Adam*, 638 A.2d 718, 719 (Me. 1994).

### Was service proper?

Defendant claims that he was not properly served with process and that he never received actual notice of Plaintiff's action against him until after default judgment was entered. Defendant argues that this failure of process and notice renders the judgment void for lack of personal jurisdiction, or alternatively constitutes excusable neglect.

Rule 4 allows service of process to be made on an individual "by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein . . . ." M.R. Civ. P. 4(d)(1). "Service of process serves a dual purpose. It serves the basic purpose of giving the party served adequate notice of the pendency of an action . . . [and] gives the court personal jurisdiction over the defendant." *Brown v. Thaler*, 2005 ME 75, ¶ 10, 880 A.2d 1113, 1116 (citing *Town of Ogunquit v. Dep't of Pub. Safety*, 2001 ME 47, ¶ 11, 767 A.2d 291, 294; *Lewien v. Cohen*, 432 A.2d 800, 804–05 (Me. 1981). "Any judgment by a court lacking personal jurisdiction over a party is void." *Id.* (citing *Lewien*, 432 A.2d at 805).

When process is served by an officer its return "should be given 'a presumption of regularity which may be overturned by positive evidence that the defendant was not in fact served.'" *Vargelis v. Minieri*, 620 A.2d 275, 276 (quoting 1 Field, McKusick &

Wroth, *Maine Civil Practice* § 4.14 (2d. ed. 1970). Furthermore, if service gives the defendant actual notice, a technical defect should not invalidate that service. *Brown*, 2005 ME 75, ¶ 9, 880 A.2d at 1116 (citing *Phillips v. Johnson*, 2003 ME 127, 834 A.2d 938). However, these lenient "construction[s] of Rule 4 'cannot be utilized as . . . substitute[s] for the plain legal requirement as to the manner in which service [of process] may be had.'" *Id.* (quoting *Bennett v. Circus U.S.A.*, 108 F.R.D. 142, 148 (N.D. Ind. 1985)) (internal quotations omitted).

In this case the deputy's return of service indicates that he did not deliver a copy of the complaint and summons to Defendant personally through in-hand service. Instead, the deputy went to Defendant's office, had a brief encounter with Defendant who subsequently left the office, and then left copies of the complaint and summons in an empty room. The deputy characterized this as "drop service," akin to delivering service at a "dwelling house or usual place of abode with some person of suitable age and discretion then residing therein . . . ." *See* M.R. Civ. P. 4(d)(1). However, service could not have been valid under that provision of Rule 4 because the deputy did not leave the summons and complaint with a suitable person and in any event an office is not a dwelling or abode. *Camden Auto Co. v. Mansfield*, 120 Me. 187, 190 (Me. 1921) (office or place of business not equivalent to dwelling or abode). This means that service could only be effective if personal service was accomplished or if the service had minor technical defects cured by actual notice.

Plaintiff argues that under the circumstances the return of service should be presumed valid and attempts to analogize the situation to the one in *Fuller v. Kenney*. In that case service was validly executed when an officer "offered a summons to [the] defendant, and upon the defendant's refusal to receive it, threw it down . . . ." 32 Me. 334, 335 (Me. 1850). The Law Court reasoned that actual notice had been accomplished

5

and that the defendant should not be able to evade the law through sheer obstinacy. *Id.* Plaintiff claims that the evidence shows Defendant likewise had actual notice, and tried to evade process by sneaking away after the deputy told Defendant "who [he] was and why [he] was there." Rinaldi Aff. ¶ 3.

Defendant argues that unlike the defendant in *Kenney*, he did not know that the deputy was trying to serve him with process and had no actual notice of the pending action. Defendant claims that the deputy did not say he was at the office to serve process on Defendant, and that Defendant did not find copies of the summons or complaint later that day. Thomsen Aff. ¶¶ 18–19, 22, 25. The affidavits create a question of fact not present in *Kenney* about whether Defendant received service or actual notice. On this 60(b) Motion, the resolution of this dispute is in the Court's discretion. *Foley v. Adam*, 638 A.2d 718, 719 (Me. 1994).

Under these circumstances, the Court finds that Defendant received inadequate service of process. While there is a presumption of validity for returns of service filed by officers, there is also "a strong preference in our law for deciding cases on the merits." *Thomas v. Thompson*, 653 A.2d 417, 420 (Me. 1995) (citing *Wescott v. Allstate Ins.*, 397 A.2d 156 (Me. 1979)). In this case the return of service does not clearly establish that Defendant was served with technically correct process, Defendant swears that he had no actual notice.

Therefore, Mr. Thomsen's Motion to Vacate Default Judgment is Granted.

At the direction of the Court, this Order shall be incorporated into the docket by reference. Rule 79(a).

Dated:     November 3, 2009

| PLAINTIFF | DEFENDANT | |
|---|---|---|
| CHARLES SMITH , ESQ | DEFENDANT | |
| SMITH ELLIOTT ET ALS | JOHN HOBSON , ESQ. | G. Arthur Brennan |
| PO BOX 1179 | KEITH DUNLAP, ESQ. | Justice, Superior Court |
| SACO ME    04072 | PERKINS THOMPSON ET ALS | |
| | PO BOX 426 | |
| | PORTLAND ME    04112 | DEFENDANT |
| | | WT ENTERPRISES pro se |
| | | 100 MIDDLE STREET |
| | | PORTLAND ME    04104 |

6