**MID–CONTINENT WOOD PRODUCTS, INC., Plaintiff–Appellee,**

v.

**Lawrence A. HARRIS, Defendant–Appellant.**

**No. 89–3571.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 13, 1990.

Decided July 3, 1991.

Rehearing and Rehearing In Banc Denied Sept. 13, 1991.

Roger Pascal, Michael L. Brody, Patricia J. Thompson, Schiff, Hardin & Waite, Chicago, Ill., for plaintiff-appellee.

Sean M. Sullivan, Arthur F. Radke, Ross & Hardies, Chicago, Ill., for defendant-appellant.

Before COFFEY, RIPPLE, and KANNE, Circuit Judges.

COFFEY, Circuit Judge.

Lawrence A. Harris appeals the district court's order denying his Rule 60(b)(4) motion to vacate and dismiss a default judgment on the grounds of improper service of process. We reverse.

## I. FACTS AND DISPOSITION BELOW

Harris Plywood, Inc. ("Harris Plywood") purchased lumber from the plaintiff, Mid–Continent Wood Products, Inc. ("Mid–Continent") on three separate occasions between May and August of 1980. When Harris Plywood failed to make any payments on the three shipments, the parties entered into negotiations in October 1980 and Harris agreed that the amount due would bear interest at the rate of fourteen percent per annum and that payments would commence within a few weeks. After Harris Plywood failed to make any payments, Mid–Continent filed suit in April 1981 for breach of contract. The parties entered into negotiations for a second time and after these discussions proved fruitless, Mid–Continent filed a motion for a default judgment. On October 28, 1981, the district court granted Mid–Continent's motion for a default judgment in *Mid–Continent Wood Products, Inc. v. Harris Plywood, Inc.* in the amount of $28,544.75.[1] Instead of executing on the default judgment, Mid–Continent accepted a promissory note for the judgment amount from the defendant Lawrence Harris, President of Harris Plywood, in December of 1981. When Harris failed to pay the amount due, Mid–Continent filed this action to collect on Harris' promissory note.

Mid–Continent makes clear that (to state it mildly) it had a rather difficult time locating Harris and serving him with the complaint and summons. Initially, Mid–Continent attempted to serve Harris personally through a U.S. Marshal in December 1982. One month later on January 5, 1983, the marshal again attempted service by certified mail at Harris' place of employment, Superb Realty Corporation.[2] Harris denied receipt of this mailing.

Mid–Continent states it next attempted service in May 1983 through a private process server at what was thought to be Harris' residence at 13 Secor Drive, Port Washington, New York. On two separate occasions the server attempted personal service but found no one at the address. On the third attempt, the server left the complaint and summons attached to the door of the residence, and followed this up by mailing another copy addressed to Harris at the same address.

At the request of the district court, Mid–Continent's attorney sent a letter on June 3, 1983, to the residence at 13 Secor Drive in order to notify Harris of an upcoming status hearing. A copy of this letter was also sent to Harris' counsel of record in the previous lawsuit, Samuel Panzer. Neither

---

1. Harris Plywood never challenged the October 28, 1981, default judgment against it or the service in that action.

2. Harris went to work for Superb Realty Corporation, 115–40 Dunkirk Street, St. Albans, New York, after Harris Plywood went out of business.

the letter to Harris nor the copy sent to Harris' attorney included copies of the complaint and summons. Harris' attorney contacted Mid–Continent on June 9, 1983 and proposed a settlement in which Harris would pay the entire amount due on the note in monthly installments. Mid–Continent's attorney rejected the offer and stated instead that if the full amount was not received, Mid–Continent would seek a judgment order against Harris. Nevertheless, Harris' attorney confirmed in writing Harris' intention of forwarding a check and promissory notes in partial satisfaction of the amount due under Harris' guaranty. As promised by Harris' attorney, a mailing arrived from Superb Realty, Harris' place of business, containing a check for $1,000.00 signed on behalf of Superb Realty and three notes for $1,000.00 each, also signed by agents acting on behalf of Superb Realty. On June 16, 1983, Mid–Continent's attorney again informed Harris' attorney that no settlement for less than the full amount would suffice and that if full payment was not received before the next status hearing on June 28, 1983, Mid–Continent would seek a default judgment against Harris. When no further payments were made, Mid–Continent obtained a default judgment against Harris on July 20, 1983, in the amount of $24,549.92.

After securing the judgment, Mid–Continent alleges that it attempted but was unable to locate Harris' assets for some time for purposes of executing on the judgment. Six years later, in June of 1989, Mid–Continent located certain assets of Harris' in Massachusetts and attempted to execute upon the 1983 judgment. However, on August 31, 1989, Harris filed a motion for relief in the district court pursuant to Rule 60(b)(4) of the Federal Rules of Civil Procedure[3] claiming that because service on him did not properly comply with Rule 4 of the Federal Rules of Civil Procedure, the district court lacked personal jurisdiction over

him at the time of the entry of judgment in 1983 and further that he never received a copy of the complaint and summons in this action. In support of his motion, Harris offered exhibits and affidavits stating that he never resided at 13 Secor Drive, Port Washington, New York, but stated that he lived at 15 Secor Drive, Port Washington, New York in 1983. He further stated that no one at 13 Secor Drive ever brought any documents pertaining to the case to his house at 15 Secor Drive. The district court issued an opinion denying Harris' motion to vacate and dismiss the default judgment on the grounds of improper service of process on November 1, 1989. While the district court acknowledged in its opinion that service upon Harris did not strictly comply with Rule 4, it nonetheless determined that strict compliance was unnecessary because of: 1) Harris' "actual knowledge of the lawsuit" based on Harris' former attorney's negotiations with Mid–Continent; 2) Mid–Continent's diligent efforts "to obtain technically proper service upon Harris"; and 3) Harris' evasive conduct in responding to the attempts at service of process.

## II. ISSUE FOR REVIEW

The issue before us is whether a district court may formulate its own test to determine whether to assert personal jurisdiction over a defendant in the absence of service of the complaint and summons in accordance with Rule 4 of the Federal Rules of Civil Procedure.

## III. DISCUSSION

We review a district court's application of a legal standard *de novo*. *Forum Corporation of North America v. Forum, Ltd.*, 903 F.2d 434, 438 (7th Cir.1990).

The district court found that Mid–Continent's attempted service of process on Harris did not comply with Rule 4.[4] The dis-

---

**3.** Rule 60(b)(4) provides relief from a final judgment when the judgment is void.

**4.** The district court stated:
 "It must also be noted that, contrary to plaintiff's position and regardless of the burden of proof in this case, the plaintiff's service

on the defendant did not strictly comply with Rule 4. Hanging a summons and complaint on a door with follow-up uncertified mailing cannot qualify as either personal, abode or certified mail service under Rule 4. Neither does this procedure qualify under the even stricter Illinois service requirements. Al-

trict court then proceeded to devise a three-part test and fashioned an exception to the usual requirements of strict compliance with Rule 4:

> "When the cases are examined, three requirements present themselves as requisite to finding an exception to strict compliance. First, it is imperative to upholding faulty service that the defendant actually know of a lawsuit.... Second, the server must show that he duly tried to serve the defendant properly; in other words, show that more than a minimum effort was made and that the service actually made on the defendant came reasonably close to satisfying the requirements. This is often stated in terms of the plaintiff having 'substantially complied' with Rule 4's mandate.... Third, the equities of the situation must warrant an exception from the usual strict compliance requirement. Specifically, the focus here is on the conduct of the defendant in responding to the situation."

The district court determined that these three factors "point clearly toward an exception from strict compliance in this case."

Rule 4(d)(1) provides that the complaint and summons shall, with respect to an individual defendant who is not an infant or incompetent, be made:

> "by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process."

The Supreme Court recently addressed the issue of judicially created rules authorizing the service of process:

> "We would consider it unwise for a court to make its own rule authorizing service of summons. It seems likely that Congress has been acting on the assumption that federal courts cannot add to the scope of service of summons Congress has authorized.... The strength of this long-standing assumption, and the network of statutory enactments and judicial decisions tied to it, argue strongly against devising commonlaw service of process provisions at this late date for at least two reasons. First, since Congress concededly has the power to limit service of process, circumspection is called for in going beyond what Congress has authorized. Second, as statutes and rules have always provided the measures for service, courts are inappropriate forums for deciding whether to extend them." *Omni Capital International v. Rudolf Wolff & Company, Ltd.*, 484 U.S. 97, 108 S.Ct. 404, 412–413, 98 L.Ed.2d 415 (1987) (citations and footnotes omitted.)

This court has previously stated that a liberal construction of the rules of service of process "cannot be utilized as a substitute for the plain legal requirement as to the manner in which service of process may be had." *United States v. Mollenhauer Laboratories, Inc.*, 267 F.2d 260, 262 (7th Cir.1959).

The district court has not cited, nor have we discovered, any cases in support of a judicially created three-part test for substantial compliance with Rule 4's requirements for service of process such as the one devised by the district court. Instead, the factors considered by the district court have questionable validity, and as a result, the district court's three-part test must fail.

■ The first factor the district court considered in determining the jurisdictional question concerning Harris was its finding that Harris had "actual knowledge of the lawsuit" based on Harris' former attorney's negotiations with Mid–Continent. The district court quotes *Armco, Inc. v. Penrod–Stauffer Building Systems, Inc.* for the proposition that "[w]hen there is actual notice, every technical violation of the rule or failure of strict compliance may not invalidate the service of process." 733

---

though the plaintiff attempts to argue in favor of the rule that mail service coupled with actual knowledge complies with Rule 4, such a rule would render the rule's explicit procedures meaningless."

F.2d 1087, 1089 (4th Cir.1984). However, the appellate court in *Armco* found the service of process to be invalid despite the defendant's knowledge of the suit and thus, the trial court was without jurisdiction and the default judgment was void. *Id.* at 1089.

This court has long recognized that valid service of process is necessary in order to assert personal jurisdiction over a defendant. *Rabiolo v. Weinstein,* 357 F.2d 167 (7th Cir.1966). Moreover, it is well recognized that a "defendant's actual notice of the litigation ... is insufficient to satisfy Rule 4's requirements." *Way v. Mueller Brass Company,* 840 F.2d 303, 306 (5th Cir.1988); *see also Sieg v. Karnes,* 693 F.2d 803, 807 (8th Cir.1982).

In a case similar to ours, the District Court for the Northern District of Indiana held that a defendant's knowledge of a lawsuit will not serve to "cure the deficiencies in service." *Bennett v. Circus U.S.A.,* 108 F.R.D. 142, 148 (1985). In *Bennett,* the plaintiff was unable to locate the defendant and attempted service of the complaint and summons by sending them certified mail to the law firm which had represented the defendant in a previous matter. The law firm signed the return receipt and forwarded the complaint and summons to the defendant. The defendant then contacted the law firm to seek representation in the matter. After agreeing to represent the defendant, the defendant's attorney contacted the plaintiff's attorney and informed him that the firm was not an agent of the defendant authorized to accept service of process. The parties' attorneys also discussed the possibility of settling the underlying dispute. Several months later, after a hearing at which the defendant did not appear, the district court entered a default judgment against the defendant for failure to answer the complaint. Almost two years after the default judgment had been entered, the plaintiff located assets of the defendant in North Carolina, registered the default judgment in that state, and proceeded to execute on the judgment. At this time, the defendant moved to vacate the default judgment under Rule 60(b)(4) on the ground that he had never been prop-erly served with the complaint and summons. The district court granted the defendant's motion and set aside the default judgment. Citing *Schultz v. Schultz,* 436 F.2d 635 (7th Cir.1971), the *Bennett* court initially held that service of the summons and complaint upon the defendant's attorney was insufficient because the attorney had not been specifically appointed as an agent to accept service of process. Next, the court rejected the plaintiff's argument that the court had personal jurisdiction over the defendant because the defendant knew of the lawsuit prior to the entry of the default judgment. In rejecting this argument, the district court stated:

> "[the] liberal construction rule 'cannot be utilized as a substitute for the plain legal requirement as to the manner in which service may be had.' *United States v. Mollenhauer Laboratories, Inc.,* 267 F.2d 260, 262 (7th Cir.1959).... *Precisely because of the court's need to get jurisdiction over the person of the defendant, actual notice alone is insufficient to give the court the jurisdiction necessary to allow it to enter a judgment against a defendant ....* Therefore, [the defendant's] knowledge of the pendency of this lawsuit cannot cure the deficiencies in service upon [the defendant]." *Bennett* at 148 (citations omitted and emphasis added).

We agree with the *Bennett* court and hold that actual knowledge of the existence of a lawsuit is insufficient to confer personal jurisdiction over a defendant in the absence of valid service of process. Even though Harris may have had knowledge of the lawsuit as a result of Harris' former attorney's negotiations with Mid–Continent, "actual notice alone is insufficient to give the court the jurisdiction necessary to allow it to enter a judgment against a defendant." *Id.* Thus, the district court's reliance on actual notice in determining that it had personal jurisdiction over Harris is erroneous.

■ The second part of the district court's three-part test focused on whether "the service actually made on the defen-

dant came reasonably close to satisfying the requirements [of Rule 4]." The district court characterized this factor as whether the plaintiff "substantially complied" with Rule 4's mandate.[5] The district court determined that Mid–Continent "tried diligently to obtain technically proper service upon Harris." The court further noted that these attempts "were sufficient to result in settlement discussions between the parties."

This court is reluctant to find jurisdiction based upon whether Mid–Continent "tried diligently" to serve Harris. Indeed, the extent to which the plaintiff "tried" to serve process should not be a factor as to whether a federal court has personal jurisdiction over a defendant. Rather, the requirements of Rule 4 are satisfied only when the plaintiff is successful in serving the complaint and summons on the defendant.

The district court cites *United Food & Commercial Workers Union v. Alpha Beta Company*, 736 F.2d 1371 (9th Cir. 1984), for its erroneous conclusion that a plaintiff need only come "reasonably close" to satisfying the requirements of Rule 4. However, *United Food* is applicable only to those cases in which the "substantial compliance" is used to prevent a technical error in the form of the documents under Rule 4 from defeating an otherwise proper and successful delivery of process. In *United Food*, the defendant argued that the district court did not have personal jurisdiction over it because the complaint and summons incorrectly directed the defendant that it was required to answer the complaint within ten days, rather than the proper twenty-day period. The court in *United Food* determined that the defendant failed to present any evidence that it was prejudiced by the minor defect in the summons because the defendant answered the petition and argued its case before the

district court and the court of appeals. *Id.* at 1382. It is significant to note that the defendant in *United Food* did not argue that the *delivery of the complaint and summons was improper under Rule 4, but rather that the form of the summons and complaint was improper.* Thus, to the extent that the "substantial compliance" doctrine has any validity, it is applicable to only those cases such as *United Food,* where it was involved to prevent a purely technical error in the form of the documents under Rule 4 from invalidating an otherwise proper and successful delivery of process.

■ Even if we agreed with the district court's interpretation of the "substantial compliance" doctrine (which we do not), the facts lead us to believe that ours is a case of "substantial *non*-compliance." The extent of Mid–Continent's efforts to obtain service on Harris consisted of the following: 1) one certified mailing of the complaint and summons to a business address of Harris (which Harris denies receiving), and neither the envelope containing the complaint and summons nor the return receipt evidencing delivery were ever returned; 2) three attempts at personal service by a private process server over a four-day period at an incorrect address; and 3) a non-certified mailing to the same incorrect address.

■ The district court also cites the settlement discussions between the parties' attorneys as proof that the above-cited attempts at service were sufficient. However, nowhere in Rule 4 is there an exception for settlement discussions in the absence of the usual requirements of proper service of process, nor does the district court cite any case law in support of this proposition. Settlement discussions with Harris cannot save Mid–Continent from its failure to "substantially comply" with Rule 4's requirements of service of process.

---

**5.** As we noted *supra,* Rule 4(d)(1)'s clear language provides that the summons and complaint shall, with respect to an individual defendant who is not an infant or incompetent, be made "by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process."

The third and final factor of the district court's three-part test is whether the "equities" of the case warrant an exception from the usual strict compliance requirement: "Specifically, the focus here is on the conduct of the defendant in responding to the situation." The court cites evasion of process by the defendant as "the most typical example" of this kind of conduct. In support of this factor, the district court relied on *Nikwei v. Ross School of Aviation, Inc.*, 822 F.2d 939, 942 (10th Cir. 1987), a case in which the defendant's motion to vacate the default judgment on the grounds of improper certified mail service was denied because the record clearly established that the defendant had refused to accept his mail. The district court also cited *Benage v. Gibraltar Building and Loan Association, Inc.*, 115 F.R.D. 20, 21 (D.Conn.1987), another case where effective service was found to have been accomplished where the defendant actually received the mail service but refused to acknowledge it.

The cases cited by the district court involve clear-cut examples of evasion: both involve defendants who specifically refused to acknowledge service and are thus distinguishable. The facts in the case before us fall short of establishing clear and convincing evidence of evasion on the part of the defendant. Unlike the defendants in *Nikwei* and *Benage*, there is no evidence that Harris either refused to accept his mail or actually received mail service but refused to acknowledge it. The district court infers evasion on the part of Harris because of the repeated, *though faulty*, attempts at service of process by Mid–Continent. As we stated *supra*, valid service of process is a must in order to assert personal jurisdiction over a defendant. Furthermore, the district court found that Harris had acted inequitably by allowing his attorney to engage in settlement discussions with Mid–Continent's attorney and then challenging the service of process six years after the judgment was entered: "Defendant in this case simply sat on his potential defense until the plaintiff finally found some of his assets and only then attempted to assert it." While we certainly do not condone Harris' or his attorney's conduct, we are of the opinion that the record falls short of supporting a finding of evasion or inequitable conduct by Harris.

## IV. CONCLUSION

The three-part test devised by the district court to uphold the default judgment entered against Harris fails to support an exception to the service of process requirements of Rule 4. Therefore, the district court's order denying Harris' Rule 60(b)(4) motion to vacate and dismiss the default judgment on the grounds of improper service of process is reversed.