FEDERAL EQUIPMENT CORP., Plaintiff,

v.

PUMA INDUSTRIAL CO., LTD., et al., Defendants.

No. 97 C 0352.

United States District Court, N.D. Illinois, Eastern Division.

Oct. 23, 1998.

Lawrence J. Crain, Steven P. Fallon, Greer, Burns & Crain, Ltd., Chicago, IL, for Plaintiff/Petitioner.

Michael David Gannon, Brinks, Hofer, Gilson & Lione, Chicago, IL, for Puma Industrial Co., Ltd.; Paul T. Meiklejohn, Seed & Berry, Seattle, WA, for Defendant/Respondent.

John Christopher Filosa, David I. Roche, David Jonathan Davis, Baker & McKenzie, Chicago, IL, for Nema Industries, Inc.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Before the court is defendant Puma Industrial Co., Ltd.'s motion to vacate the default judgment entered against it on September 25, 1997. For the following reasons, the court grants the motion to vacate pursuant to Federal Rule of Civil Procedure 60(b)(4).

## I. BACKGROUND

On January 17, 1997, plaintiff Federal Equipment Corp. ("Federal") filed suit against Puma Industrial Co. d/b/a Nema Industries, Inc., alleging trademark infringement, copyright infringement, and unfair competition. On May 14, 1997, Federal filed an amended complaint, naming Nema Industries, Inc. ("Nema"), which is an Illinois corporation, and Puma Industrial Co., Ltd. ("Puma Taiwan"), which is a Taiwanese corporation, as two separate defendants.

On September 22, 1997, Federal moved for entry of default judgment against Puma Taiwan. In its motion, Federal represented that it served Puma Taiwan "through its U.S. agent Nema." (Pl.'s Br. in Supp. of Mot. for Default J. Against Puma (hereinafter "Pl.'s Default Br.") at 2.) Three days later, the court entered judgment in favor of Federal and against Puma Taiwan in the amount of $746,363.16.

The matter is currently before the court on Puma Taiwan's motion to vacate the default judgment pursuant to Federal Rule of Civil Procedure 60(b)(4). Puma Taiwan argues that the judgment is void because (1) Federal failed to serve Puma Taiwan as required by Federal Rule of Civil Procedure 4 and (2)

this court does not have personal jurisdiction over Puma Taiwan.

## II. *DISCUSSION*

■ Federal Rule of Civil Procedure 60(b)(4) provides in pertinent part: "On motion and upon such terms as are just, the court may relieve a party ... from a final judgment ... for the following reasons: ... (4) the judgment is void." FED. R. CIV. P. 60(b)(4). If a court lacks personal jurisdiction over the defendant, a judgment entered against that defendant is void. *Kravit, Gass & Weber, S.C. v. Michel,* 134 F.3d 831, 838 (7th Cir.1998). Valid service of process is necessary in order for the court to assert personal jurisdiction over a defendant. *Mid–Continent Wood Prods., Inc. v. Harris,* 936 F.2d 297, 301 (7th Cir.1991). Thus, a default judgment entered against a defendant is void if the plaintiff did not properly serve the defendant. *Fleet Mortgage Corp. v. Wise,* No. 92 C 1102, 1997 WL 305319, at *1 (N.D.Ill. May 29, 1997). The burden is on the defendant to show that the judgment is void for lack of service of process. *Trustees of Cent. Laborers' Welfare Fund v. Lowery,* 924 F.2d 731, 732 n. 2 (7th Cir.1991); *Bally Export Corp. v. Balicar, Ltd.,* 804 F.2d 398, 404 (7th Cir.1986).

Puma Taiwan's first argument is that the judgment should be vacated because Federal never served Puma Taiwan. Federal concedes that it never served Puma Taiwan. Federal, however, argues that it served Nema and that service on Nema is effective as to Puma Taiwan because Nema is Puma Taiwan's involuntary agent for the purpose of service of process. Thus, the only issue before the court is whether Nema is Puma Taiwan's involuntary agent for the purpose of service of process.[1]

In this case, the only evidence is that Nema is a distinct corporate entity from Puma Taiwan. (Decl. of Yi–Yung Hsiao (hereinafter "Hsiao Decl.") ¶ 4.) Nema is not a subsidiary of Puma Taiwan and was not one at the time that this suit was com-menced. (Chieu Decl. ¶ 7.) Puma Taiwan does not own any stock in Nema. (Bodine Decl. Ex. 1 at 2.) Thus, the precise issue before the court is whether the court should deem Nema who has no formal corporate relationship with Puma Taiwan to be Puma Taiwan's agent for the purpose of service of process.

The parties agree that Illinois law governs the issue of whether Nema is Puma's involuntary agent for the purpose of service of process. However, Federal has not cited, and the court has not found, any Illinois cases addressing the issue of whether one corporation may be served process by means of service on another corporation where the two corporations have no formal corporate relationship. There are cases dealing with whether a parent corporation can be served via service on one of its subsidiary corporations. Because the court ultimately finds that Nema is not Puma Taiwan's involuntary agent for the purpose of service of process, the court will assume for the purpose of ruling on this motion that the involuntary agent theory could apply in a case where the corporation that was served has no formal corporate relationship to the corporation that was not served.

■ In Illinois, a subsidiary corporation that is not sufficiently independent from its parent corporation can be deemed the parent's involuntary agent for service of process. *Gilmore v. KG,* No. 97 C 5106, 1998 WL 164887, at *2 (N.D.Ill. Mar. 31, 1998). Whether a subsidiary will be deemed a parent's involuntary agent depends on the relationship between the two corporations. *Wissmiller v. Lincoln Trail Motosports, Inc.,* 195 Ill.App.3d 399, 141 Ill.Dec. 927, 552 N.E.2d 295, 298 (1990). "The mere existence of a parent-subsidiary relationship is insufficient to establish the close ties necessary for a subsidiary to be deemed a parent's agent for service of process." *Id.* However, it is not necessary that the parent control the subsidiary to the extent that the corporations are essentially one or to make the subsidiary an alter ego of the parent. *Id.*

---

1. Federal does not argue that service on Nema was effective as to both Nema and Puma because Nema is Puma's alter ego. *See Bally Export,* 804 F.2d at 405 ("Where one corporation so controls another corporation that, as a practical matter, the two entities function as one, service on one corporation is effective as to both."). Accordingly, the court need not consider that theory.

■ In determining whether the subsidiary corporation should be deemed the parent's agent for service of process, the court should focus on how much control the parent corporation exercises over the subsidiary. *Chung v. Tarom*, 990 F.Supp. 581, 584 (N.D.Ill.1998); *Akari Imeji Co. v. Qume Corp.*, 748 F.Supp. 588, 592 (N.D.Ill.1990). There is no bright-line test for determining how much control a parent corporation must have over a subsidiary before the subsidiary will be deemed the parent's agent for the purpose of service of process. *Chung*, 990 F.Supp. at 584. Rather, in making the determination, the court must consider any relevant factors, including whether:

> (1) the subsidiary was established and wholly owned by the parent; (2) the parent paid the salaries of the subsidiary's directors; (3) the parent guaranteed the subsidiary's lease; (4) the subsidiary's sole business was the sale of parts for the parent; (5) the parent listed the subsidiary's address in advertisements; (6) the subsidiary existed primarily to promote the sale and distribution of the parent's products; (7) the subsidiary was obligated to repair and sell parts for the parent's products; (8) the subsidiary was contractually required to apprise the parent of all aspects of its business; (9) the subsidiary was authorized to prosecute trademark infringement suits in the parent's name; (10) the parent controlled the subsidiary's choice of dealers, designation of products and services, stock levels, and methods of ordering; (11) the parent dominated the subsidiary's board of directors; (12) the subsidiary conducted its board meetings in the domicile of the parent; and (13) the subsidiary was listed on a consolidated financial sheet along with the parent rather than publishing its own annual report.

*Id.*

### A. *Exhibit F of Federal's motion to vacate*

Before addressing the above factors, the court must address one evidentiary issue. In its response brief, Federal continually argues that Yi–Yung Hsiao ("Hsiao") is an "officer" of Puma Taiwan. Federal did not submit any evidence with its response brief in support of this statement. The only evidence submitted with respect to the motion to vacate was that Hsiao is a minority shareholder in Puma Taiwan and a shareholder in and President of Nema. (Hsiao Decl. ¶¶ 1–2, 8.) In attempting to determine why Federal continuously called Hsiao an "officer" of Puma Taiwan, the court reviewed Federal's original motion for default judgment. In that motion, Federal asserted that Hsiao was the general manager of Puma Taiwan. (Pl.'s Default Br. at 3.) In support of that statement, Federal cited page 5 of exhibit F of its motion.

■ Exhibit F of Federal's motion for default is an unauthenticated document which contains hearsay statements that Hsiao was the General Manager of Puma Taiwan. There is no indication as to on what date the document was prepared, although there is a date on it which looks like the date that it was faxed to someone. No attempt was made by Federal to authenticate the document or to lay the foundation for its admissibility. In its opening brief, Puma Taiwan pointed out that the document was unauthenticated hearsay, (Def.'s Br. at 2); however, Federal made no attempt to cure these deficiencies. Accordingly, the court will not consider this document when ruling on this motion to vacate. Consequently, there is no evidence before the court that Hsiao was an officer of Puma Taiwan when or after Federal served Nema.

### B. *The Chung factors*

The first factor that the court must consider is whether the subsidiary was established and wholly owned by the parent. In this case, there is no dispute that Nema is not wholly, or even partially, owned by Puma Taiwan. There is some dispute, however, as to whether it can be said that Puma Taiwan established Nema. According to Hsiao's declaration, Hsiao and two other individuals, and not Puma Taiwan, established Nema. (Hsiao Decl. ¶ 8.) Federal, however, argues that Puma Taiwan established Nema "through the actions of its officer Mr. Yi–Yung Hsiao." (Pl.'s Resp. at 14.) Federal has not provided any evidence or made any argument as to why the court should attribute Hsiao's ac-

tions in establishing Nema to Puma Taiwan other than the fact that Hsiao is a shareholder in Puma Taiwan. This is not enough. It is true that Hsiao is a minority shareholder in Puma Taiwan; however, Hsiao has never held more than 15% of Puma Taiwan's stock. (Hsiao Decl. ¶ 1.) The other two founding shareholders of Nema are not shareholders of Puma Taiwan. (*Id.* ¶ 8.) Further, according to his declaration, Hsiao has never exerted control over Nema in his capacity as a minority shareholder of Puma Taiwan. (*Id.* ¶ 3.) Given the evidence before the court, the court finds that the simple fact that Hsiao is a minority shareholder of Puma Taiwan is not enough to show that he established Nema on behalf of Puma Taiwan.

The second factor is whether the parent paid the salaries of the subsidiary's directors. According to Hsiao's declaration, "Puma Taiwan does not pay the salaries of Nema's officers, directors, or employees." (Hsiao Decl. ¶ 9.) Federal does not address this factor and has not submitted any evidence which contradicts Hsiao's declaration.

The third factor is whether the parent guaranteed the subsidiary's lease. According to Hsiao's declaration, "Puma Taiwan does not guarantee Nema's lease. Nema pays for its own lease." (Hsiao Decl. ¶ 10.) Federal does not address this factor and has not submitted any evidence contradicting Hsiao's declaration.

The fourth factor is whether the subsidiary's sole business was the sale of parts for the parent. Federal argues that "Nema's sole business has always been directly related to the sale of Puma products." (Pl.'s Resp. at 14.) According to Hsiao's declaration, (1) Nema is an independent distributor of Puma Taiwan's products; (2) "Puma Taiwan has no say as to which products Nema chooses to distribute or sell"; (3) "Nema is free to distribute or sell the products of companies other than Puma Taiwan"; and (4) "Nema chooses to sell products and parts made by Puma Taiwan because that company makes quality products—not because of any obligation of Nema to Puma Taiwan." (Hsiao Decl. ¶¶ 4–6.) According to Chieu's testimony, 30% of Nema's sales come from Puma Taiwan products while 50% come from Puma Tennessee and 20% come from other sources. (Chieu Dep. at 174–75.) The only evidence before the court is that Puma Tennessee is a distinct corporate entity from Puma Taiwan. (2d Chieu Decl. ¶ 6.) There is no evidence that Puma Taiwan controls Puma Tennessee. Federal has not offered evidence that contradicts either Chieu's or Hsiao's declaration or Chieu's testimony. Evaluating the evidence as a whole, the court finds that it is undisputed that Nema sells products other than those of Puma Taiwan and, thus, Nema's sole business was not the sale of parts for Puma Taiwan.

The fifth factor is whether the parent listed the subsidiary's address in advertisements. In this case, both parties have submitted copies of promotional pieces that list Nema as a "U.S.A. Factory and Office" of Puma and provide Nema's address. Federal argues that the promotional pieces describe Nema as a United States factory and office of Puma Taiwan. (Pl.'s Resp. at 14.) Puma Taiwan argues that the catalog shows that Nema is a part of the "Puma Group." Puma Taiwan then explains that "Puma Group" is not synonymous with "Puma Taiwan"; rather, " 'Puma Group' is a term that Nema, Puma Tennessee, and Puma Taiwan use when they collaborate to help promote Puma products." (Def.'s Reply at 7.) Reviewing this evidence, the court finds that the promotional materials only show that Nema was part of the Puma Group and that the Puma Group is not the same thing as Puma Taiwan.

Federal also points out that Chieu testified that Puma Taiwan printed and distributed calendars which listed Nema as a United States factory and office of Puma. (Pl.'s Resp. at 4.) There was no copy of this document submitted to the court. However, Chieu testified that the calendar was similar to the promotional piece that the court reviewed. Therefore, from what the court can tell, the calendar shows nothing different than the promotional piece, *i.e.,* it shows that Nema was a part of the Puma Group, which is different than being a part of Puma Taiwan.

Federal believes this way of advertising is "curious." The court does not believe it to be curious. It appears from the promotional

pieces that the different corporate entities were simply involved in a joint promotional activity. That the parties would participate in such a joint activity is not surprising given that one entity is the manufacturer of the product while the other is an authorized distributor.

The sixth factor is whether the subsidiary existed primarily to promote the sale and distribution of the parent's products. As previously discussed, Puma Taiwan has submitted evidence which shows that Nema sells and distributes products from companies other than Puma Taiwan. (Hsiao Decl. ¶¶ 5–6; Chieu Dep. at 174–75.) Federal has not offered evidence that contradicts either Hsiao's declaration or Chieu's testimony. Federal simply argues that "Nema's sole reason for existence is to promote the sale and distribution of Puma's products, as shown above." (Pl.'s Resp. at 14.) Federal has shown no such thing. Evaluating the evidence as a whole, the court finds that it is undisputed 70% of Nema's business comes from the sale of products from Puma Tennessee and other sources, while only 30% comes from the sale of Puma Taiwan's products.

The seventh factor is whether the subsidiary was obligated to repair and sell parts for the parent's products. Federal cites to Chieu's deposition testimony in support of its argument that "Nema was obligated to repair and sell parts for Puma's products." (Pl.'s Resp. at 14.) Puma Taiwan argues that Federal misconstrues Chieu's testimony. The court agrees with Puma Taiwan. The court does not read Chieu's cited deposition testimony as meaning that Nema is *obligated* to repair and sell parts for Puma Taiwan's products. Chieu testified that Nema would service a compressor because Nema wants to satisfy the customer. (Chieu Dep. at 153.) There is no evidence of any obligation on the part of Nema to Puma Taiwan to service or repair Puma Taiwan's parts.

The eighth factor is whether the subsidiary was contractually required to inform the parent of all aspects of its business. According to Hsiao's declaration, "[t]here is no contractual requirement for Nema to apprise Puma Taiwan of any or all aspects of its business." (Hsiao Decl. ¶ 11.) Federal argues that this

factor is satisfied by the fact that Chieu testified that he calls Hsiao every other day to discuss business. (Pl.'s Resp. at 14 (citing Chieu Dep. at 154).) It would not be reasonable to infer from Chieu's cited testimony that there is a contractual agreement for Nema to inform Puma Taiwan of all aspects of its business. Chieu is the Vice President of Nema; Hsiao is the President. (Hsiao Decl. ¶¶ 1–2.) It is quite reasonable that the two would talk on the phone every other day to discuss Nema's business. According to Hsiao's declaration, "Mr. Chieu calls me on a regular basis because I am the President and one-half owner of Nema, and I have a duty to keep abreast of any and all developments within Nema." (Hsiao Decl. ¶ 11.) As before, Federal provides no evidence for why the court should find that Chieu is contacting Hsiao as anything other than as President of Nema. Accordingly, the court finds that there is no evidence of a contractual arrangement pursuant to which Nema must inform Puma Taiwan of all aspects of its business.

The ninth factor is whether the subsidiary was authorized to prosecute trademark infringement suits in the parent's name. According to Hsiao's declaration, "Nema is not authorized to prosecute trademark infringement suits in the name of Puma Taiwan." (Hsiao Decl. ¶ 12.) Federal has not provided any evidence contradicting Hsiao's sworn statement. Federal contends that the ninth factor is "inconclusive due to lack of evidence" but notes that "it is interesting that Nema uses Puma trademarks without any written agreement." (Pl.'s Resp. at 14.) Federal's argument sheds no light on the court's analysis. Using Puma Taiwan's trademark as an authorized distributor is a wholly different issue than having the authority to prosecute trademark infringement actions in Puma Taiwan's name.

The tenth factor is whether the parent controlled the subsidiary's choice of dealers, designation of products and services, stock levels, and methods of ordering. According to Hsiao's declaration, Puma Taiwan "does not control any of the operations of Nema ... or have any influence over Nema's choice of dealers, designation of products and services, or methods of ordering." (Hsiao Decl.

¶ 13.) Federal argues that this factor is satisfied because "Puma, through its officer, Mr. Yi–Yung Hsiao, clearly controlled all aspects of Nema's active operations, including choice of dealers, designation of products and services, and methods of ordering." (Pl.'s Resp. at 14.) The problem with Federal's argument is that Federal has provided no evidence which shows, or from which an inference can be drawn, that Hsiao was acting on behalf of Puma Taiwan and not as President of Nema. According to his declaration, Hsiao has never exerted control over Nema in his capacity as a minority shareholder of Puma Taiwan. (Hsiao Decl. ¶ 3.) Federal has offered no contradicting evidence.

The eleventh factor is whether the parent dominated the subsidiary's board of directors. Federal argues that this factor is satisfied because "Hsiao, acting on behalf of Puma, exerts control over Mr. Chieu, as his boss." (Pl.'s Resp. at 14.) As before, however, Federal has offered no evidence why Hsiao's actions should be imputed to Puma Taiwan. In contrast, Hsiao's sworn statement is that he has never exerted control over Nema in his capacity as a minority shareholder of Puma Taiwan. (Hsiao Decl. ¶ 3.) There is simply no evidence that Puma Taiwan dominated Nema's board of directors or officers.

The twelfth factor is whether the subsidiary conducted its board meetings in the domicile of the parent. Federal admits that this factor is not satisfied. (Pl.'s Resp. at 14.) Federal goes on to argue that the factor is not satisfied "only because Nema did not conduct annual meetings" which "tends to show ... that there is no point in Nema conducting such meetings since Mr. Yi–Yung Hsiao of Puma makes all important decisions concerning operation of Nema." (Pl.'s Resp. at 14–15.) Embedded in Federal's argument is an unproven assumption. By arguing that Hsiao "of Puma" makes all important decisions concerning Nema's operations, Federal is arguing that the court should consider Hsiao as acting on behalf of Puma Taiwan and not Nema. As before, Federal has offered no evidence why the court should determine that Hsiao was acting on behalf of Puma Taiwan and not as the President of Nema.

The thirteenth and final factor is whether the subsidiary was listed on a consolidated financial sheet along with the parent rather than publishing its own annual report. There is no evidence before the court with respect to this factor.

Federal makes several arguments which do not fall under one of the above factors but which Federal contends show that Puma Taiwan controlled Nema. Federal first argues that Puma Taiwan's control over Nema is evidenced by the fact that Nema was essentially a continuation of the now defunct Puma Industrial Illinois ("Puma Illinois"). (Pl.'s Resp. at 2–3.) Assuming that fact is true, that fact shows nothing. First, there is no evidence that Puma Taiwan controlled Puma Illinois, only that Puma Illinois was a subsidiary of Puma Taiwan when it was established. The relevant inquiry, however, should be what degree of control the parent corporation had over the subsidiary at the time that the subsidiary was served. Federal has offered no evidence that Puma Taiwan and Nema were anything but separate corporate entities or that Puma Taiwan controlled Nema at the time Nema was served.

Federal argues that Puma Taiwan's control over Nema is evidenced by the fact that Nema never attended trade shows unless invited to do so by Puma Taiwan who paid all the expenses. The court finds this argument unconvincing. First, Chieu testified that Nema paid his expenses for attending the trade shows. (Chieu Dep. at 30–31.) Second, Federal even admits that Nema attends the trade shows under the name of "Puma Group." (Pl.'s Resp. at 4.) It is not surprising that the companies would promote themselves this way, that Puma Taiwan would invite Nema to attend the trade shows with them in the United States, or that Puma Taiwan would pay the expense for registration and rent on the booth. Puma Taiwan is the manufacturer of Puma products and Nema is an authorized distributor in the United States.

Federal also argues that Puma Taiwan's control over Nema is evidenced by the fact that Puma Taiwan allows Nema to use the

Puma trademark without any sort of written agreement. (Pl.'s Resp. at 4.) The court also finds this argument unconvincing. According to the second Chieu declaration, "[t]he fact Nema has no formal written agreement with Puma Taiwan regarding use of its trademark reflects Nema's normal business practice." (2d Chieu Decl. ¶ 5.) Chieu also stated that "Nema also has oral agreements with several companies other than Puma Taiwan regarding use of their trademarks." (*Id.*) Federal has submitted no evidence which would contradict Chieu's sworn statements.

Federal's final argument is that Puma Taiwan's control over Nema is evidenced by the fact that Chieu called Hsiao to discuss the present lawsuit with him. (Pl.'s Resp. at 5.) Puma Taiwan argues that this fact evidences nothing because "Mr. Hsiao, as the president of Nema, would be expected to be kept apprised of lawsuits against his company." (Def.'s Reply at 11.) The court agrees with Puma Taiwan on this issue.

Ignoring the individual factors and evaluating Federal's arguments as a whole, the court believes that Federal's argument that Nema is Puma Taiwan's agent is primarily based on a premise which Federal failed to prove: that Hsiao acted on behalf of, and that his actions can be imputed to, Puma Taiwan. Federal has failed to offer evidence which shows that this is true. The only evidence is that Hsiao is a minority shareholder in Puma Taiwan. In contrast, Puma Taiwan offered uncontroverted evidence that (1) Hsiao has never exerted control over Nema in his capacity as a minority shareholder of Puma Taiwan and (2) Puma Taiwan does not control Nema in any way. (Hsiao Decl. ¶¶ 1–13.)

■ Considering the above factors with no one factor being dispositive, the court finds that there is not enough evidence to show that Puma Taiwan exercises the degree of control over Nema that is necessary to find that Nema was Puma Taiwan's agent for the purpose of service of process. Puma Taiwan (1) did not establish Nema; (2) owns no stock in Nema; (3) does not guarantee Nema's lease; (4) does not pay the salaries of Nema directors, officers, or employees; (5) does not control Nema's choice of dealers, designation of products and services, stock levels, and methods of ordering; and (6) does not dominate Nema's board of directors. Further, Nema (1) is not obligated to repair and sell parts for Puma Taiwan's products; (2) is not contractually required to inform Puma Taiwan of all aspects of its business; (3) does not have the authority to prosecute trademark infringement actions in Puma Taiwan's name; and (4) does not conduct board meetings in Taiwan.

It is true that 80% of Nema's business comes from selling Puma products. However, 30% is from Puma Taiwan while 50% is from Puma Tennessee, which is a distinct corporate entity from Puma Taiwan. Further, it is undisputed that 20% of Nema's business is from products that are not Puma products.

It is also true that Puma Taiwan, Puma Tennessee, and Nema promote themselves and attend trade shows together as the "Puma Group." This does not show that Puma Taiwan controlled Nema. It is reasonable that the parties would promote themselves in this way given that all three entities have an interest in promoting Puma products. While this evidence shows that the companies are affiliated as the Puma Group, "[m]ere affiliation does not justify deeming one corporation the agent of another corporation for the service of process." *Chung,* 990 F.Supp. at 586.

There is one final point that the court must emphasize. It makes no difference if Puma Taiwan was aware of the lawsuit even though it was not properly served. As the Seventh Circuit has explained, "actual knowledge of the existence of a lawsuit is insufficient to confer personal jurisdiction over a defendant in the absence of valid service of process." *Mid–Continent Wood Prods.,* 936 F.2d at 301.

In sum, Federal failed to serve Puma as required by Federal Rule of Civil Procedure 4. Federal's service on Nema is not effective as to Puma Taiwan because the court finds that Nema is not Puma Taiwan's agent for the purpose of service of process. Accordingly, Puma Taiwan has met its burden in

573

proving that the judgment was void because Federal failed to serve Puma Taiwan.[2]

## III.  CONCLUSION

For the foregoing reasons, the court grants defendant Puma Industrial Co., Ltd.'s motion to vacate the default judgment. Accordingly, the court vacates the default judgment entered on September 25, 1997 in favor of plaintiff Federal Equipment Corp. and against defendant Puma Industrial Co., Ltd. in the amount of $746,363.16.  Accordingly, this case is reinstated only as to defendant Puma Industrial Co., Ltd.

2. Because the court finds that judgment is void for improper service, the court need not address Puma Taiwan's argument that the judgment is void because the court lacked personal jurisdiction over Puma Taiwan.